**CENTRAL MAGNETIC IMAGING OPEN MRI OF PLANTATION, LTD., Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Defendants.**

**Case No. 11–20857–CIV.**

United States District Court, S.D. Florida.

June 3, 2011.

Kenneth John Dorchak, Buchalter Hoffman and Dorchak, North Miami, FL, Kimberly Lynn Boldt, Boldt Law Firm, Hollywood, FL, for Plaintiff.

Benjamine Reid, Jonathan Anthony Cipriani, Carlton Fields, P.A., Miami, FL, D. Matthew Allen, Carlton Fields, P.A., Tampa, FL, Johanna W. Clark, Carlton Fields, P.A., Orlando, FL, for Defendants.

## ORDER

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Defendants, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company's (collectively "State Farm['s]") Motion to Dismiss ("Motion") [ECF No. 12], filed March 25, 2011.[1] The Court has considered the parties' written submissions and applicable law.

## I. BACKGROUND [2]

This putative class action was filed by Plaintiff, Central Magnetic Imaging Open MRI of Plantation, Ltd. ("CMI"), as assignee of three separate insured persons (collectively the "Insureds"). (*See* 2d Am. Compl. ¶ 1 [ECF No. 26] ). CMI seeks to recover for breach of contract by State Farm "for failing to pay the proper amounts for Magnetic Resonance Imaging ("MRI") services" provided by CMI. (*Id.* ¶ 1). CMI, as an MRI service provider,

---

1. This case comprises three consolidated cases—11–20857, 11–20861, and 11–20992.

2. The allegations of Plaintiff's Second Amended Complaint are taken as true.

was assigned the Insureds' Personal Injury Protection benefits ("PIP"). (*See id.*).

Plaintiff brings this action on behalf of itself and "all other entities or persons who provided MRI services to Insureds covered by PIP policies issued by Defendants pursuant to Florida's No Fault Insurance Law, who received an assignment of insurance benefits, and whose bills were paid based upon the OPPS fee schedule and/or the multiple diagnostic imaging rule...." (*Id.* ¶ 9). Plaintiff is unsure of the "precise number of members of the Class," and this may only be determined through discovery. (*Id.* ¶ 11). The class, however, "includes hundreds of people, and is so numerous that joinder of all members is impracticable...." (*Id.*).

The Insureds had contracts—insurance policies—with State Farm that obligated State Farm to pay for the Insureds' MRIs. (*See id.* ¶ 2). State Farm's payments were to be calculated based on the schedule of fees contained in Florida Statutes sections 627.736(a)(2)(f) and 627.736(5)(a)(3), which were incorporated into the contracts. (*See id.*). "Those fees are based upon 80% of 200% of the participating provider fee schedule of Medicare Part B" for the year when services are rendered, and the fees include "the proviso that such amount shall not be less than 80% of 200% of the amount allowable under the 2007 participating provider fees schedule for Medicare Part B." (*Id.*). Because the insurance policies were sold in Florida, the policies were subject to Florida Statute sections 627.730 through 627.7405. (*See id.* ¶ 20).

CMI alleges State Farm is in breach of the contracts and is in violation of Florida Statute section 627.736. (*See id.* ¶ 3). It contends State Farm improperly calculated payment by incorporating what is known as the Medicare Multiple Diagnostic Imaging Rule("MMDIR"), resulting in underpayments. (*See id.*). As a result of "Defendant[s'] refusal to properly calculate

the payment," Defendants did not properly reimburse it for MRI services. (*Id.*).

With respect to the three specific cases at issue, the Insureds were in separate car accidents that resulted in personal injuries, requiring medical services. (*See id.* ¶¶ 18, 21). The Insureds were covered by mandatory Florida Motor Vehicle No–Fault Insurance policies issued by State Farm. (*See id.* ¶ 16). The Insureds' polices provided that State Farm would cover PIP benefits for "reasonable" medical services that were "related or necessary as a result of an automobile accident." (*Id.* ¶ 19). After their accidents, the Insureds received "reasonable, related and medically necessary MRI services" from Plaintiff. (*Id.* ¶ 22). Following the MRIs, the Insureds assigned their rights to receive payments and benefits to CMI in consideration for receiving the MRIs. (*See id.* ¶ 24).

After the Insureds assigned their benefits to CMI, CMI timely submitted its bills to State Farm for payment. (*See id.* ¶ 25). CMI "complied with all conditions precedent to obtaining payment of no-fault benefits from Defendants." (*Id.* ¶ 26). After submitting the claims for payment, State Farm paid $1,432.86 on each claim. (*See id.* ¶ 27). While Defendants' payments were supposed to be based on the statutory fee schedules, Defendants "failed to pay the Plaintiff 80% of 200% of the participating provider fee schedule of Medicare Part B for the year in which the services were rendered." (*Id.*). "Instead the Defendants improperly paid a portion of the bill based upon application of the Medicare Multiple Diagnostic Imaging Rule...." (*Id.*). Furthermore, because Defendants paid pursuant to the policies, Defendants conceded the MRIs are reimbursable. (*See id.* ¶ 28).

Plaintiff states three claims—one for breach of contract, one for unjust enrichment, and one for declaratory and injunc-

tive relief. (*See id.* pp. 10–11). CMI alleges State Farm breached the policies by failing to properly make full payments thereunder by improperly applying the MMDIR. (*See id.* ¶¶ 30–39).

CMI's second claim, for unjust enrichment, is alleged in the alternative to the breach-of-contract claim. (*See id.* ¶ 40). CMI alleges that by failing to fully pay on the claims, State Farm deprived Plaintiff of moneys owed to it, and State Farm was then unjustly enriched. (*See id.* ¶¶ 41–42). "Defendants cannot lawfully reduce coverage for the benefits and services provided to their PIP insurance contracts and are not lawfully entitled to keep the monies due and owing to Plaintiff and the Class." (*Id.* ¶ 43). CMI concludes "it would be inequitable for Defendant to retain the monies due and owing Plaintiff and the Class." (*Id.* ¶ 44).

The third claim, seeking injunctive and declaratory relief, seeks to answer the question whether Defendants may apply the MMDIR. (*See id.* ¶ 47). Without an injunction, Plaintiff alleges it and class members "will be subjected to irreparable harm by way of continued unlawful reductions in reimbursements thereby requiring the continuous need to file legal action regarding such reductions...." (*Id.* ¶ 50). This may lead to Plaintiff and class members being "discouraged from providing needed care to persons insured under Florida Personal Injury Protection policies." (*Id.*).

State Farm has now moved to dismiss the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir.2009) (citing *Iqbal*, 129 S.Ct. at 1949).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). But pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S.Ct. at 1950; *see also Sinaltrainal*, 578 F.3d at 1260 (" '[U]nwarranted deductions of fact' in a complaint are not admitted as true for purposes of testing the sufficiency of the allegations.").

## III. ANALYSIS

### A. Florida's PIP Statute

Since 1971, Florida has had a No–Fault Law, "a comprehensive statutory scheme, the purpose of which is to 'provide for medical, surgical, funeral, and disability insurance benefits without regard to fault, and to require motor vehicle insurance securing such benefits.'" *Allstate Ins. Co. v. Holy Cross Hosp., Inc.*, 961 So.2d 328, 331–32 (Fla.2007) (quoting FLA. STAT. § 627.731 (2006)). The Florida No–Fault Law allows the "security" to be established through PIP insurance. *Id.* (citing quoting FLA. STAT. § 627.733).

Florida Statute section 627.736 contains the requirements for PIP benefits. Insurance policies shall provide personal injury protection for injuries "arising out of the ownership, maintenance, or use of a motor vehicle...." FLA. STAT. § 627.736(1). The PIP statute sets up a "unique" system, "abolish[ing] a traditional common-law right by limiting the recovery available to car accident victims" in exchange for making "PIP insurance compulsory and allow[ing] recovery regardless of fault." *State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So.2d 1067, 1077 (Fla.2006). "Under section 627.736(1)(a), PIP benefits are required to be paid to the injured insured's health care providers at 80% of their submitted bills for 'all *reasonable* expenses for *necessary* medical, surgical, X-ray, dental, and rehabilitative services' until the coverage of $10,000 is exhausted." *Progressive Am. Ins. Co. v. Stand–Up MRI of Orlando*, 990 So.2d 3, 5 (Fla. 5th DCA 2008) (emphasis in original). The statute also limits the amount any "physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party" to "a reasonable amount pursuant to this section for the services and supplies rendered."

FLA. STAT. § 627.736(5)(a)(1). Similarly, in the insurance policies at issue State Farm agreed it would "provide coverage for PIP benefits for all medical services rendered to the Insured that were reasonable, related or necessary as a result of an automobile accident." (2d Am. Compl. ¶ 19).

The parties address various subsections of section 627.736(5). Subsection (5) contains "strict guidelines for both PIP insurers and medical providers, including how and when charges must be submitted and benefits paid." *Allstate Ins.*, 961 So.2d at 332 (citing FLA. STAT. § 627.736(4)-(5)).

State Farm "elected to make payment in accordance with a schedule of fees" from Florida Statute section 627.736(5)(a)(2)(f) and Florida Statute section 627.736(5)(a)(3). (2d Am Compl. ¶ 2). Section 627.736(5)(a)(2)(f) allows insurers to limit their reimbursement to 80 percent of:

> 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder.... Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by the insurer.

FLA. STAT. § 627.736(5)(a)(2)(f). Section 627.736(5)(a)(3) then sets

> the applicable fee schedule or payment limitation under Medicare [as] the fee schedule or payment limitation in effect at the time the services, supplies, or care was rendered and for the area in which such services were rendered, except that it may not be less than the allowable amount under the participating physicians schedule of Medicare Part B for 2007 for medical services,

supplies, and care subject to Medicare Part B.

FLA. STAT. § 627.736(5)(a)(3).

The final provision at issue, Florida Statute section 627.736(5)(a)(4), restricts insurers' ability to apply limitations on "the number of treatments" or "other utilization limits that apply under Medicare":

> Subparagraph 2. does not allow the insurer to apply any limitation on the number of treatments or other utilization limits that apply under Medicare or workers' compensation. An insurer that applies the allowable payment limitations of subparagraph 2. must reimburse a provider who lawfully provided care or treatment under the scope of his or her license, regardless of whether such provider would be entitled to reimbursement under Medicare due to restrictions or limitations on the types or discipline of health care providers who may be reimbursed for particular procedures or procedure codes.

FLA. STAT. § 627.736(5)(a)(4). Plaintiff contends that under this subsection, "the [Florida] Legislature intended to prohibit additional reimbursement reductions, like the [MMDIR] reduction State Farm is utilizing to further reduce" Plaintiff's reimbursements. (Mot. Opp'n 7).

## B. Reasonableness

Defendants assert that because reasonableness is a fact-based inquiry, the problem of individualized proof makes a class action inappropriate. (*See* Mot. 9–13). Furthermore, they state the reasonableness inquiry is for the trier of fact to determine on a case-by-case basis. (*See id.*).

The PIP statute allows for many considerations when determining whether a particular charge is "reasonable":

> With respect to a determination of whether a charge for a particular service, treatment, or otherwise is reason-able, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, and reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

FLA. STAT. § 627.736(5)(a)(1).

The reasonableness inquiry may indeed be inappropriate for a class action. But this concern is irrelevant when considering the sufficiency of the pleading. Moreover, Plaintiff has removed the reasonableness question from consideration as it stipulates the calculations of the reimbursement amounts were reasonable. (*See* Mot. Opp'n 7–8). Plaintiff only challenges State Farm's "additional reductions" under the MMDIR. (*Id.* 8). Nevertheless, Defendants insist this is still, ultimately, a reasonableness inquiry and is ill-suited for a class action. (*See* Reply 2–6 [ECF No. 35] ).

█ Defendants' argument is unavailing. Plaintiff is not challenging the *amounts* State Farm reimbursed. Instead, it is challenging the *use* of the MMDIR itself. Under Plaintiff's theory, State Farm is liable for breach of contract simply by applying the MMDIR in violation of section 627.736(5)(a)(4), no matter the reimbursement amount. At the class-certification stage, the parties may address whether this is appropriate for a class action.

In arguing that the reasonableness determination is not proper for a class action, insisting it must be determined on a case-by-case basis, Defendants essentially concede that Plaintiff states a claim on which relief may be granted. (*See* Mot. 9–13; Reply 3–6). The breach of contract claim may proceed.

## C. Unjust Enrichment

Second, State Farm maintains that Plaintiff may not seek restitution based on unjust enrichment as an alternative claim because Plaintiff may only sue under an insurance policy. (*See* Mot. 15–16).

A PIP suit seeks "to recover damages for breach of an insurance contract." *Nichols*, 932 So.2d at 1072. A medical provider, like Plaintiff, may only bring an action for PIP benefits if the insured has assigned "his or her right to such benefits under the policy to the medical provider." *Progressive Exp. Ins. Co. v. McGrath Cmty. Chiropractic*, 913 So.2d 1281, 1285 (Fla. 2d DCA 2005). Without that assignment, the medical provider has no standing to sue. *See id.*; *see also Oglesby v. State Farm Mut. Auto. Ins. Co.*, 781 So.2d 469, 470 (Fla. 5th DCA 2001) ("[O]nly the insured or the medical provider 'owns' the cause of action against the insurer at any one time. And the one that owns the claim must bring the action if an action is to be brought.").

■ A party may only recover under an unjust enrichment theory when there is no valid express or implied-in-fact contract. *See Zarrella v. Pac. Life Ins. Co.*, 755 F.Supp.2d 1218, 1226–27 (S.D.Fla. 2010) (citing *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F.Supp.2d 1317, 1326–27 (S.D.Fla.2000)). But a medical provider may only sue under an assigned insurance policy. Plaintiff is thus left in a catch-22: it may only recover under unjust enrichment if there is no valid contract (insurance policy), but if there is no valid contract to assign, it lacks standing to sue. There is thus no way for Plaintiff to recover under an unjust enrichment theory.

■ Finally, unjust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid. *See Zar-*

*rella*, 755 F.Supp.2d at 1227–28 (quoting *In re Managed Care Litig.*, 185 F.Supp.2d 1310, 1337–38 (S.D.Fla.2002)). No party here contests the existence of a valid contract. In fact, in the unjust-enrichment claim, Plaintiff does not challenge the validity of the PIP insurance contracts, but rather seeks to recover the difference between the amount actually paid on the contract and the amount Plaintiff believes should have been paid. (*See* 2d Am. Compl. ¶ 43). Plaintiff thus seeks recovery under an unjust-enrichment theory *in addition to* payments under a valid contract. As there is a valid express contract that no party challenges, Plaintiff may not recovery under unjust enrichment, and may not assert it as an alternative claim under Federal Rule 18.

## D. Declaratory and Injunctive Relief

Defendants assert the third claim, for declaratory and injunctive relief, must also be dismissed. They maintain that because damages are an adequate remedy at law, there is no basis for declaratory or injunctive relief. (*See* Mot. 14–15). Plaintiff contends that the contract claim and the declaratory and injunctive relief claim have different goals. (*See id.* 13). It asserts the claim of breach seeks to remedy past wrongs, while the declaratory and injunctive relief claim is to "resolve the issue for future cases." (*Id.*).

■ "It is well-settled that 'equitable relief is available only in the absence of an adequate remedy at law.'" *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 Fed.Appx. 502, 503 (11th Cir.2007) (citations omitted). "In order to receive declaratory or injunctive relief, plaintiffs must establish that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir.2000) (citing

*Newman v. Alabama,* 683 F.2d 1312 (11th Cir.1982)). "The critical question is whether there exists an adequate remedy at law, not whether the moving party prefers one remedy to another." *SME Racks,* 243 Fed.Appx. at 503–04 (citing *Rosen v. Cascade Int'l, Inc.,* 21 F.3d 1520, 1531 (11th Cir.1994)).

 Here, there is an adequate legal remedy—damages for breach of contract. *See id.* at 504 ("Here, the district court properly determined that there are various forms of alternative relief available to the Appellants, namely damages for breach of contract."). Existing legal remedies will adequately "vindicate" Plaintiff's rights should Defendants be found liable. *Id.* Additionally, "[d]eclaratory relief is not available where the issue is whether an unambiguous contract has been breached." *MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.,* 755 F.Supp.2d 1205, 1210 (M.D.Fla.2010) (determining declaratory judgment was unavailable in a similar case challenging "whether the amount calculated by Defendants was, in fact, 80% of a reasonable amount."). Finally, to the extent Plaintiff is concerned about future wrongdoing by State Farm, a determination in this case that applying the MMDIR is improper, costing State Farm money and setting precedent, will protect future claimants.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion [**ECF No. 28**] is **GRANTED in part and DENIED in part.**[3]

**DONE AND ORDERED.**

---

3. Defendants request the Court order the parties to mediate. (*See* Reply 7). The Court has already done so in the Scheduling Order. (*See* [ECF No. 31]).