Dwight WILSON, Jesus A. Avelar–Lemus, Jessie Cross, and Mattie Cross on behalf of themselves and all others similarly situated, Plaintiff,

v.

EVERBANK, N.A., Everhome Mortgage, Assurant, Inc., Standard Guaranty Insurance Company, and American Security Insurance Company, Defendants.

Case No. 14–CIV–22264.

United States District Court, S.D. Florida.

Signed Jan. 5, 2015.

Entered Jan. 6, 2015.

Aaron Samuel Podhurst, John Gravante, III, Matthew Weinshall, Peter Prieto, Podhurst Orseck, P.A., Miami, FL, John Scarola, Searcy Denney Scarola Barnhart & Shipley, West Palm Beach, FL, Darnley D. Stewart, Giskan Solotaroff Anderson & Stewart LLP, New York, NY, Howard Mitchell Bushman, Lance August Harke, Sarah Clasby Engel, Harke Clasby & Bushman LLP, Miami Shores, FL, Randall Seth Crompton, Eric D. Holland, Holland, Groves, Schneller & Stolze, St. Louis, MO, Thomas A. Tucker Ronzetti, Robert J. Neary, Rachel Sullivan, Adam M. Moskowitz, Kozyak Tropin & Throckmorton, P.A., Coral Gables, FL, for Plaintiff.

David D. Christensen, Irene C. Freidel, K & L Gates LLP, Boston, MA, Paul F. Hancock, Olivia Rae Waters Kelman, K & L Gates LLP, Farrokh Jhabvala, Franklin G. Burt, Landon King Clayman, Todd Matthew Fuller, Carlton Fields Jorden Burt PA, Miami, FL, for Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

BETH BLOOM, District Judge.

**THIS CAUSE** is before the Court on the Motions to Dismiss Plaintiffs Dwight Wilson, Jesus A. Avelar–Lemus, Jessie Cross and Mattie Cross' ("Plaintiffs") Class Action Complaint, ECF No. [1] (the "Complaint"), filed by Defendants Ever-Bank and Everhome Mortgage (together, "EverBank" and EverBank's "Motion to Dismiss", ECF No. [32]), and Defendant American Security Insurance Company ("ASIC" and ASIC's "Motion to Dismiss", ECF No. [36]), Defendant Standard Guaranty Insurance Company ("SGIC" and SGIC's "Motion to Dismiss", ECF No. [37]), and ASIC and SGIC's separate Motion to Dismiss for lack of subject matter jurisdiction (the "Motion on Jurisdiction", ECF No. [64]). The Court has reviewed the Motions, all supporting and opposing filings, and the record in this case; has had the benefit of oral argument by the parties; and is otherwise fully advised as to the premises. For the reasons set forth below, the Court in part grants and in part denies the Motions.

### I. BACKGROUND

This case involves allegations that Defendants entered into an exclusive and collusive relationship to manipulate the force-placed insurance market and artificially inflate the amounts charged to mortgage borrowers for force-placed insurance premiums.

Plaintiff Dwight Wilson took a mortgage loan from Coral Gables Federal Savings and Loan Association in September, 1994 secured by a mortgage on real property in North Palm Beach, Florida. Compl. ¶ 47. In 2001, Wilson's mortgage was refinanced with Community Savings, F.A. *Id.* Wilson's mortgage was subsequently acquired by EverBank. *Id.* EverBank was thereafter responsible for the servicing of Wilson's mortgage. *Id.* Wilson had voluntary insurance coverage, which lapsed on April 25, 2013. *Id.* ¶ 49. Wilson subsequently obtained voluntary coverage with an effective date of May 15, 2013. *Id.* ¶ 50. Due to the lapse in coverage, EverBank purchased an annual force-placed hazard insurance policy from ASIC and placed it on Wilson's home. *Id.* ¶ 51. The annual cost of the force-placed policy was approximately $13,000 and provided less coverage than Wilson's prior policy. *Id.* ¶ 52. EverBank created an escrow account for Wilson with a debit for the approximately $13,000 in force-placed insurance charges.

*Id.* ¶ 53. Wilson's voluntary insurance coverage again lapsed in December 2013; Wilson again secured coverage in January 2014. *Id.* ¶¶ 54–55. EverBank refunded portions of the approximately $13,000 first charged to Wilson, but charged Wilson over $700 for a less than two-month period. *Id.* ¶ 56.

Plaintiff Jesus A. Avelar–Lemus took a mortgage loan from Opteum Financial Services, LLC, on June 24, 2005, secured by a mortgage on real property in Westbury, New York. *Id.* ¶ 60. Subsequently and at all times relevant to the Complaint, Avelar–Lemus' mortgage loan was owned and/or serviced by EverBank. *Id.* Until sometime in 2010, Avelar–Lemus had paid an annual premium of between approximately $1,845 and $2,345.08 for homeowner's insurance coverage obtained in the open market. *Id.* ¶ 62. By letter dated July 16, 2010, the Everhome Defendants notified Avelar–Lemus of a lapse in his homeowner's coverage and that it already had acquired an insurance policy from ASIC for retroactive coverage on Avelar–Lemu's property which had commenced on June 24, 2010. *Id.* ¶ 63. This premium for this policy was $5,248.00, which EverBank charged to Avelar–Lemus's escrow account. *Id.* EverBank informed Avelar–Lemus that "[t]he premium has been charged to your escrow account and your payment will be adjusted appropriately." *Id.* The letter dated July 16, 2010, also disclosed that "an affiliate of [EverBank] may receive a commission on the premium charged." *Id.* By letter dated June 17, 2011, EverBank notified Avelar–Lemus that it was renewing the force placed policy with ASIC for another year, effective June 24, 2011, and that the annual premium was $5,248.00. *Id.* ¶ 64. This letter also indicated EverBank may receive "commission" on the premium charged. *Id.* By letter dated July 3, 2013, EverBank notified Avelar–Lemus that they had renewed the lender-placed hazard insurance

policy with ASIC on his property for another year, and that the policy effective date was retroactive to June 24, 2013. *Id.* ¶ 66. The annual premium on this policy renewal was $4,563.00. *Id.*

Plaintiffs Jessie and Mattie Cross obtained a mortgage loan from CMSC Mortgage Company secured by a mortgage on real property in East St. Louis, Illinois. *Id.* ¶ 68. Subsequently and at all times relevant to the Complaint, the Crosses' mortgage loan was owned and/or serviced by EverBank. *Id.* The Crosses' voluntary insurance coverage lapsed in October 2012. *Id.* ¶ 68. EverBank subsequently force-placed an insurance policy from SGIC on the Crosses property. *Id.* ¶ 71. EverBank later renewed that policy. *Id.* ¶ 72. EverBank charged the premium amounts to the Crosses. *Id.* The annual amount charged to the Crosses for the force-placed policy was approximately $1,600. *Id.* ¶ 73.

Each Plaintiffs' mortgage agreement specifically requires the borrower to maintain hazard, wind and (for property located in a flood hazard area) flood insurance coverage on the mortgaged property, and explicitly permits the lender to obtain force-placed coverage and charge the premiums to the borrower rather than declare the borrow in default on its obligation to maintain insurance coverage. *Id.* ¶ 28. The lender is also authorized to force-place the coverage retroactively. *Id.* ¶ 32. Once a lapse in coverage was identified, ASIC or SGIC sent notice to the borrower, on letterhead identifying them with the lender or servicer, that insurance would be purchased and force-placed if the borrower did not continue his or her required voluntary coverage. *Id.* ¶ 31. If the lapse continued, the insurer then notified the borrower that insurance was being force-placed at his or her expense. *Id.* After coverage was forced-placed on the property, EverBank paid the insurer and charged

the borrower for the payment, which was either deducted from the borrower's mortgage escrow account or added to the balance of the borrower's loan. *Id.* ¶ 33.

Plaintiffs readily admit that "[p]ermitting a lender to forcibly place insurance on a mortgaged property and charge the borrower the full cost of the premium is neither a new concept nor a term undisclosed to borrowers in mortgage agreements." *Id.* ¶ 28. However, they allege that unknown to the borrowers and not disclosed in the mortgage agreements is that Ever-Bank maintained an exclusive relationship with ASIC and SGIC to manipulate the force-placed insurance market and artificially inflate the amounts they charge to borrowers for force-placed insurance premiums. *Id.* ¶ 29. Part of the fees charged to Plaintiffs as force-placed insurance premiums, they allege, were kickbacks from ASIC and SGIC to EverBank disguised as "commissions" or "expense reimbursements," or inflated costs which covered the cost of discounted services. *Id.*

Plaintiffs describe the "scheme" as follows: EverBank purchases master insurance policies that cover an entire portfolio of mortgage loans. *Id.* ¶ 31. The insurer—here, ASIC or SGIC—then monitors the portfolio of mortgages to identify a borrower's insurance lapse. *Id.* When the insurer or the lender determines that a borrower has failed to maintain the required coverage, it begins a notification process to urge the borrower to adhere to its obligation to maintain coverage. *Id.* If a lapse continues, the insurer notifies the borrower that insurance is being force-placed at his or her expense. *Id.* The insurer then places its own insurance on the property securing the mortgage loan. *Id.* No separate, individualized underwriting takes place for the force-placed coverage. *Id.* ¶ 32. Insurance is automatically placed on the property and the premium charged to the borrower. *Id.* That is,

EverBank pays the insurer and then charges the borrower for the payment. *Id.* ¶ 33.

Then, the insurer "kicks-back" a set percentage of that payment to EverBank as a "commission." *Id.* ¶ 34. No bona fide services are performed or actual costs incurred by EverBank for the return payment. *Id.* ¶ 35. That is, no work is ever done by EverBank to procure insurance for any particular borrower because the coverage comes through the master or umbrella policy already in place. *Id.* ¶ 36. As a result, no commission or compensation is "earned" and EverBank does not incur any costs in relation to the force-placement of insurance for any particular borrower. *Id.* The premiums paid by the borrowers are, therefore, inflated to account for the "kickbacks" or "unearned commissions" returned to EverBank. *Id.* ¶ 37. Or, EverBank effectively pays a reduced amount for the force-placed insurance policy but does not pass these savings on to its borrowers. *Id.*

Plaintiffs also allege that EverBank and ASIC and SGIC entered into agreements for ASIC or SGIC to provide servicing activities on their entire loan portfolio at below cost. *Id.* ¶ 38. The servicing costs are added into the force-placed premiums which are then passed on to the borrower. *Id.* However, because insurance-lapsed mortgaged property comprises only one to two percent of the lenders' total mortgage portfolio, the borrowers who pay the charges from the lenders unfairly bear the entire cost to service the entire loan portfolio. *Id.* Thus, the small percentage of borrowers who are charged for force-placed insurance shoulder the costs of monitoring EverBank's entire loan portfolio, effectively resulting in an additional kickback. *Id.* ¶ 39.

Finally, Plaintiffs allege that ASIC and SGIC entered into "riskless captive rein-

surance arrangements" with EverBank to "reinsure" the property insurance force-placed on borrowers. *Id.* ¶ 40. The reinsurance agreement provides that the insurer will return to EverBank significant percentages of the premiums charged borrowers by way of ceded reinsurance premiums to their affiliates or subsidiaries. *Id.* ¶ 41. The ceded premiums, Plaintiffs allege, amount to another kickback because no real risk was assumed. *Id.*

Plaintiffs seek to recover the excess amounts charged to them beyond the true cost of the legitimately force-placed insurance coverage. *Id.* ¶ 46. Plaintiffs assert their claims on behalf of a purported nationwide class, as well as Florida and New York subclasses, of borrowers who were charged for a force-placed hazard insurance policy placed on property through EverBank. *Id.* ¶ 76.

Plaintiffs' Complaint asserts eleven causes of action: (I) breach of contract against EverBank for assessing costs which were not costs of insurance coverage; (II) breach of the covenant of good faith and fair dealing regarding Ever-Bank's exercise of discretion to choose and place insurance coverage; (III) unjust enrichment against EverBank; (IV) unjust enrichment against ASIC and SGIC; (V) violation by EverBank, alleged by Wilson, of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"); (VI) violation by EverBank of the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"); (VII) tortious interference with a business relationship against ASIC and SGIC; (VIII) breach of fiduciary duty against EverBank; (IX) violation of section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961–1968 ("RICO") against all Defendants; (X) violation of section 1962(d) of RICO against all Defendants; and (XI) violation by all Defendants, alleged by Avelar–Lemus, of the New York Deceptive Practices Act, N.Y. G.B.L. § 349 ("NYDPA").

## II. DISCUSSION

Defendants seek dismissal of the Complaint for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). The Motions center on EverBank's force-placement of insurance on Plaintiffs' property which secured their mortgage loans due to Plaintiffs' admitted failure to obtain their own coverage, and the propriety of the costs agreed to between the Defendants and charged by ASIC and SGIC to EverBank and from EverBank to Plaintiffs for the force-placed insurance coverage.

### A. Standard for Dismissal for Failure to State a Claim

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on " 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955 (alteration in original)). The Supreme

Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955); *see also Am. Dental Assoc. v. Cigna Corp.,* 605 F.3d 1283, 1288–90 (11th Cir.2010).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir.2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance,* 304 F.3d 1076, 1084 (11th Cir.2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC,.* 608 F.Supp.2d 1349, 1353 (S.D.Fla.2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 959 (11th Cir.2009); *Maxcess, Inc. v. Lucent Technologies, Inc.,* 433 F.3d 1337, 1340 (11th Cir.2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt,* 304 F.3d 1125, 1135 (11th Cir.2002)). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955; *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "Dismissal pursuant to Rule 12(b)(6) is

not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Magluta v. Samples,* 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

**B. EverBank's Motion to Dismiss**

**1. Everhome Is Not a Proper Party**

■ Everhome Mortgage ("Everhome") is a division of EverBank. *See* ECF No. [32–4] Exhs. R–S (documenting merger of Everhome into EverBank); ECF Nos. [32–2], [32–3] Exhs. B–E, HQ (letters to Plaintiffs identifying Everhome as a division of EverBank). Plaintiffs conceded this at oral argument on the Motions. A corporate division is not a separate legal entity that is capable of being sued. *See, e.g., In re Checking Account Overdraft Litig.,* 883 F.Supp.2d 1244, 1249–50 (S.D.Fla.2012) (dismissing unincorporated division as improper entity to be sued); *see also W. Beef, Inc. v. Compton Inv. Co.,* 611 F.2d 587, 591 (5th Cir.1980). As such, Plaintiffs cannot state a viable claim against Everhome, and all counts against Everhome are dismissed.

**2. Plaintiffs State a Claim for Breach of Contract Against EverBank (Count I)**

■ EverBank contends that nothing about the lender-placed insurance practices complained of by Plaintiffs constitutes a breach of Plaintiffs' mortgage agreements. EverBank highlights that Plaintiffs failed to maintain the required insurance, and that their mortgage agreements expressly authorized the lender to place insurance and charge the borrowers for that insurance. It stresses that nothing in Plaintiffs' mortgages prohibit the lender from collecting a commission or

other compensation in connection with placing the insurance, and passing that fee along to the borrower as part of the force-placed insurance charges. Therefore, it argues, whether EverBank actually charged Plaintiffs more than the net cost of the lender-places insurance policies is not relevant and does not support a claim for breach of contract.

EverBank relies heavily on *Cohen v. American Security Insurance Co.*, 735 F.3d 601 (7th Cir.2013) and *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098 (11th Cir.2014). In *Cohen*, the Seventh Circuit affirmed dismissal of breach of contract claims based on allegations that the lender charged kickbacks in connection with, and retroactively placed, lender-purchased insurance policies. 735 F.3d at 612–13. The court explained that merely labelling a commission a "kickback" was not meaningful—"[t]he defining characteristic of a kickback is divided loyalties"—and that nothing in the mortgages at issue prevented the mortgagee from collecting a commission in connection with protecting its own security interest by force-placing hazard insurance. *Id.* at 611–12. *Feaz*, which addressed Alabama force-placed flood insurance claims, relied on *Cohen* in relation to the plaintiff's breach of fiduciary duty claims. As in *Cohen*, the Eleventh Circuit explained that "simply calling a commission a kickback doesn't make it one," and that because the plaintiff had merely renamed compensation, which is by definition earned, a kickback, its claim was insufficient. 745 F.3d at 1110–11.

Several courts in this District have recently distinguished *Cohen* and *Feaz* based both on the underlying law at issue and on better pled allegations strikingly similar to those pled by Plaintiffs here. *See, e.g., Persaud v. Bank of Am., N.A.*, 2014 WL 4260853, at *8–9 (S.D.Fla. Aug. 28, 2014) (distinguishing *Cohen* and *Feaz* based on plaintiffs well-pled allegations that the

manner in which lenders force-placed insurance and makeup of charges to plaintiffs were improper); *Jackson v. U.S. Bank, N.A.*, 44 F.Supp.3d 1210, 1214, 2014 WL 4179867, at *2 (S.D.Fla.2014) (finding *Cohen* and *Feaz* inapposite where plaintiffs pled that commissions charged to borrowers were in fact unearned and that lenders misled borrowers by representing to them that the amounts were payments for work that had been performed); *Hamilton v. Suntrust Mortgage Inc.*, 6 F.Supp.3d 1300, 1310–11 (S.D.Fla.2014) (rejecting application of *Cohen* and *Feaz*, highlighting that in *Cohen*, the lender specified the dollar amount of the higher insurance coverage, and that *Feaz* dealt with the particularities of Alabama flood insurance).

Here, Plaintiffs do not challenge Ever-Bank's right to force insurance coverage in the event of a lapse in voluntary and required coverage or the sufficiency of the coverage provided. Nor do Plaintiffs contend that the forced coverage is too expensive *per se*. Rather, they allege that EverBank charged Plaintiffs for costs not properly chargeable to the borrower under the terms of their mortgage agreements in the amounts passed on to them for force-placed coverage. Plaintiffs allege that the same portion of the force-placed insurance costs passed on to EverBank's borrowers included costs beyond the cost of coverage that were not reasonably related to Ever-Bank's loan servicing—unearned commissions that in actuality represent amounts kicked back from the insurers to Ever-Bank, costs truly associated with insuring an entire loan portfolio and not the individual mortgaged property, and risk-free re-insurance costs. Plaintiffs allege that those charges were not permitted under their mortgage agreements and that Ever-Bank's actions, therefore, constitute a material breach. Those allegations state a material breach of Plaintiffs' mortgage agreements. *See Merle Wood & Assocs.,*

*Inc. v. Trinity Yachts, LLC,* 857 F.Supp.2d 1294, 1301 (S.D.Fla.2012) (To prevail on a claim for breach of contract, a plaintiff must establish "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach."). As a result, their claims for breach of contract survive a motion to dismiss.

Plaintiffs are forewarned, however, that the allegations and facts presented in their Complaint may not suffice at later stages in this litigation. As EverBank noted at the hearing on these Motions, this is not an indictment of the lender-placed insurance industry, nor does this action involve the banks and insurers sued elsewhere. Articles from *Businessweek* or *American Banker* won't be enough to hold liable the specific defendants named here. Plaintiffs must demonstrate that EverBank did what they allege with respect to the parties' rights and obligations under the various mortgage agreements—that the force-placed coverage costs were, in fact, inflated and not reasonably related to the cost of protecting their collateral; that the commissions portion of that price was, in fact, unearned and passed back from the insurers to EverBank; and that the costs Plaintiffs were forced to pay and the manner in which EverBank arrived at those amounts were, in fact, not adequately disclosed.

### 3. Plaintiffs State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Against EverBank (Count II)

 Under Florida law, every contract contains an implied covenant of good faith and fair dealing which protects "the reasonable expectations of the contracting parties in light of their express agreement." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.,* 94 So.3d 541, 548 (Fla.2012) (quoting *Barnes v. Burger King Corp.,* 932 F.Supp. 1420, 1438

(S.D.Fla.1996)); *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.,* 420 F.3d 1146, 1151 (11th Cir.2005). The covenant is implied as a gap-filling default rule where the terms of the contract vest a party with substantial discretion, requiring that party to act in a commercially reasonable manner and limiting its ability to act capriciously to contravene the reasonable expectations of the contract counterparty. *See Karp v. Bank of Am., N.A.,* 2013 WL 1121256, at *3 (M.D.Fla. Mar. 18, 2013); *Martorella v. Deutsche Bank Nat. Trust Co.,* 931 F.Supp.2d 1218, 1225 (S.D.Fla. 2013).

 "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion,* 420 F.3d at 1151. The implied duty of good faith must, therefore, "relate to the performance of an express term of the contract ... [and] cannot be used to vary the terms of an express contract." *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1316 (11th Cir.1999) (quoting *Hospital Corp. of America v. Florida Med. Ctr., Inc.,* 710 So.2d 573, 575 (Fla. 4th DCA 1998) and *City of Riviera Beach v. John's Towing,* 691 So.2d 519, 521 (Fla. 4th DCA 1997)). "As long as the implied covenant does not vary the express terms of the contract, the failure to perform a discretionary act in good faith may be a breach of the implied covenant of good faith and fair dealing." *Abels v. JPMorgan Chase Bank, N.A.,* 678 F.Supp.2d 1273, 1278 (S.D.Fla.2009) (citing *Cox v. CSX Intermodal, Inc.,* 732 So.2d 1092, 1097–98 (Fla. 1st DCA 1999)). "Where the terms of the contract afford a party substantial discretion to promote the party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable expectations of the other par-

ty." *Wallace v. NCL (Bahamas) Ltd.*, 891 F.Supp.2d 1343, 1352 (S.D.Fla.2012).

■■■ Similarly, New York law implies a covenant of good faith and fair dealing "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir.2006) (citation omitted). The covenant "can only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add to the contract a substantive provision not included by the parties." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198–99 (2d Cir.2005). While "New York law does not … recognize a separate cause of action for breach of the implied covenant of good faith and a breach of contract on the same facts," *Fellows v. CitiMortgage, Inc.*, 710 F.Supp.2d 385, 407 (S.D.N.Y.2010), "alternative pleading of contradictory claims is explicitly allowed under the Federal Rules of Civil Procedure." *Eaves v. Designs for Fin., Inc.*, 785 F.Supp.2d 229, 260 n. 23 (S.D.N.Y.2011).

■■■ By contrast, Illinois law does not provide an independent cause of action for breach of the implied covenant of good faith and fair dealing. *See APS Sports. Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir.2002). However, plaintiffs are permitted to subsume a claim for breach of the implied covenant within a breach of contract claim. *See, e.g., Stuart Park Assocs. Ltd. P'ship v. Ameritech Pension Trust*, 846 F.Supp. 701, 713–14 (N.D.Ill.1994).

■■■ Plaintiffs allege that an express contract term was violated. *See* section II.B.2, *supra.* This substantiates

their claim for breach of the implied covenant of good faith and fair dealing. Further, Plaintiffs' claim for breach of the implied covenant is not duplicative of their breach of contract claim. The former focuses on EverBank's charging Plaintiffs for costs beyond the cost of coverage and not permitted under their mortgage agreements, while the latter focuses on Ever-Bank's exercise of the discretion afforded it under Plaintiffs' mortgage agreements to select and impose insurance coverage. Therefore, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing survives. The Court interprets the Crosses claim for breach of the implied covenant as a claim for breach of contract.

### 4. Avelar–Lemus Fails to Allege That He Provided EverBank With Pre-Suit Notice (Counts I and II)

■■■ Avelar–Lemus' mortgage agreement provides that he may not

> commence, join or be joined to any court action (as either an individual or the member of a class) that arises from the other party's actions pursuant to this Security Instrument … unless the other [party] is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time to take corrective action.

ECF No. [32–3] Exh. K.[1] Plaintiffs do not allege that Avelar–Lemus provided presuit notice to EverBank, and provide no justification for that failure. Accordingly, his breach of contract and breach of the implied covenant of good faith and fair dealing claims must be dismissed without prejudice. *See, e.g., Gibson v. Chase Home Fin., LLC*, 2012 WL 1094323, at *2 (M.D.Fla. Apr. 2, 2012) (noting that pre-

---

**1.** Plaintiffs incorrectly attached to their Complaint Avelar–Lemus' second mortgage from his June 2005 mortgage transaction.

suit notice is intended to facilitate explanation and resolution without the expense of litigation). Under the circumstances here, one day less than the time provided by the Court to Plaintiffs to amend their Complaint will constitute a reasonable time within which EverBank may take corrective action upon receiving pre-suit notice from Avelar–Lemus.

### 5. Plaintiffs Fail to State a Claim for Unjust Enrichment Against EverBank (Count III)

 "The elements of an unjust enrichment claim are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Florida Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1242 n. 4 (Fla.2004) (quoting *Ruck Bros. Brick, Inc. v. Kellogg & Kimsey, Inc.*, 668 So.2d 205, 207 (Fla. 2d DCA 1995)). "It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter." *Kovtan v. Frederiksen*, 449 So.2d 1, 1 (Fla. 2d DCA 1984). Therefore, an "unjust enrichment claim [is] precluded by the existence of an express contract between the parties concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So.2d 696, 697 (Fla. 1st DCA 2008); *see also 1021018 Alberta Ltd. v. Netpaying, Inc.*, 2011 WL 1103635, at *5 (M.D.Fla. March 24, 2011) (Florida courts have held that "a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter."); *Zarrella v. Pac. Life Ins. Co.*, 755 F.Supp.2d 1218, 1227 (S.D.Fla. 2010) (same).

 A party may plead in the alternative for relief under an express contract and for unjust enrichment. *See Thunder-Wave, Inc. v. Carnival Corp.*, 954 F.Supp. 1562, 1566 (S.D.Fla.1997) (citing *Hazen v. Cobb–Vaughan Motor Co.*, 96 Fla. 151, 117 So. 853, 857–58 (1928)). "But unjust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid." *Williams v. Wells Fargo Bank N.A.*, 2011 WL 4368980, at *11 (S.D.Fla. Sept. 19, 2011) (citing *Zarrella*, 755 F.Supp.2d at 1227–28 and *In re Managed Care Litig.*, 185 F.Supp.2d 1310, 1337–38 (S.D.Fla.2002)).

 Plaintiffs cannot maintain their unjust enrichment claim under the facts they allege here because their mortgage contracts, the authenticity of which Plaintiffs cannot contest, do in fact govern the subject of Plaintiffs' dispute. *See State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, 2011 WL 6450769, at *5 (M.D.Fla. Dec. 21, 2011) ("[U]pon a showing that an express contract exists between the parties the unjust enrichment ... count fails.") (quoting *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 Fed.Appx. 714, 722 (11th Cir.2011)); *cf. Williams*, 2011 WL 4368980 at *11 (sustaining unjust enrichment claim where plaintiffs contested the validity of their mortgage contracts); *Persaud*, 2014 WL 4260853 at *14 (claim could be stated in the alternative where, by challenging successor liability, defendants challenged whether mortgage agreements governed the parties' relationship).

While Plaintiffs are entitled to plead in the alternative, they cannot dispute the authenticity of documents they submit to the Court for consideration and which are fundamental to their claims. *See Degutis v. Fin. Freedom, LLC*, 978 F.Supp.2d 1243, 1266 (M.D.Fla.2013) ("In this case, it is undisputed by Plaintiff that an express mortgage contracts exists between Plain-

tiff and the Defendants. Even though Plaintiff argues that it is alleging the unjust enrichment claim in the alternative, ... Plaintiff is not alleging that the contract is invalid. [Because] Plaintiff does not contest that there was a valid mortgage contract between the parties[,] Plaintiffs claim for unjust enrichment fails."); *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F.Supp.2d 1311, 1317 (S.D.Fla.2011) ("As there is a valid express contract that no party challenges, Plaintiff may not recover under unjust enrichment, and may not assert it as an alternative claim under Federal Rule 18."). Plaintiffs' unjust enrichment claim against Ever-Bank, therefore, fails.

### 6. Plaintiffs Cannot Maintain a FDUTPA Claim Against EverBank (Count V)

■ By its express terms, FDUTPA "does not apply to ... [b]anks or savings and loan associations regulated by federal agencies." *See* Fla. Stat. § 501.212(4)(c); *Sovereign Bonds Exch. LLC v. Fed. Republic of Germany*, 899 F.Supp.2d 1304, 1315–16 (S.D.Fla.2010). Plaintiffs bring their FDUTPA claim against Everhome only. However, Everhome is not a separate legal entity, but rather is a division of EverBank, and is not a proper party to this action. *See* section II.B.1; *supra.* Plaintiffs do not dispute that EverBank is a federal savings association that is regulated by the federal government's Office of the Comptroller of the Currency and have further admitted at oral argument that they have not stated a viable FDUTPA claim against EverBank, standing alone. EverBank thus cannot be subject to the FDUTPA, and Plaintiffs' FDUTPA claim must be dismissed, with prejudice. *See George v. Wells Fargo Bank, N.A.*, 2014 WL 61487, at *5 (S.D.Fla. Jan. 8, 2014) (dismissing FDUTPA claim against national bank).

### 7. Plaintiffs Have Sufficiently Alleged TILA Claims (Count VI)

EverBank argues that Plaintiffs' TILA claim should be dismissed because no new disclosures were required under TILA with respect to the force-placed insurance charges complained of here. It further urges dismissal of Avelar–Lemus and the Cross claims based on TILA's one-year statute of limitations.

■ The fundamental purpose of TILA is to provide borrowers with clear and accurate disclosures of loan terms. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998); 12 C.F.R. § 226.17(c). With respect to residential mortgages, TILA aims "to assure that consumers are offered and receive residential mortgage loans on terms ... that are understandable and not unfair, deceptive or abusive." 15 U.S.C. § 1639b(a)(2). Additionally, it ensures that "a creditor may not change the terms of the extension of credit if such changes make the disclosures inaccurate, unless new disclosures are provided." *Id.* § 1639(a)(2)(A). To meet its purposes, TILA "requires a creditor to disclose information relating to such things as finance charges, annual percentage rates of interest, and borrowers' rights ... and it prescribes civil liability for any creditor who fails to do so." *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 54, 125 S.Ct. 460, 160 L.Ed.2d 389 (2004).

In particular, 15 U.S.C. § 1638 and 12 C.F.R. § 226.18, which govern closed-end transactions such as residential home loans, require that the creditor must disclose the credit's "finance charge" before "the credit is extended." EverBank argues that the lender-placed insurance charges are not "finance charges" requiring new disclosures under TILA for two reasons: (1) TILA's regulations expressly exclude from "finance charges" "[p]remi-

ums for insurance against loss or damage to property" when the "insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed," and, "[i]f the coverage is obtained from or through the creditor, the premium for the initial term of insurance coverage [is] disclosed." 12 C.F.R. § 226.4(d)(2). (2) Property insurance is only a "finance charge" and thus subject to disclosure where it is "written in connection with a credit transaction." 12 C.F.R. § 226.4(b)(8). The Official Staff Commentary to section 226.4(b)(8) states that insurance placed "after consummation in closed-end credit transactions ... is not considered 'written in connection with' the credit transaction if the insurance is written because of the consumer's default (for example, by failing to obtain or maintain required property insurance)."

■ EverBank's arguments for dismissing Plaintiffs' TILA claim fails for substantially the same reason Plaintiffs' breach of contract claim survives: Plaintiffs allege that the amounts charged by EverBank were not attributable to lender-placed insurance costs authorized under Plaintiffs mortgage agreements, but rather, were improperly assessed kickbacks for unearned and not-performed services. Taking Plaintiffs allegations as true, neither of the exceptions to TILA's disclosure requirements applies here to immunize EverBank. *See, e.g., Jackson,* 44 F.Supp.3d at 1219, 2014 WL 4179867 at *6 ("Kickbacks are not properly classified as 'premiums for insurance' under the exclusion cited."); *Casey v. Citibank, N.A.,* 915 F.Supp.2d 255, 266 (N.D.N.Y.2013) ("[N]umerous courts have persuasively held that when a lender force-places insurance not contemplated in the mortgage agreement, the associated premiums are not exempt from disclosure under TILA."); *Morris v. Wells Fargo Bank N.A.,* 2012 WL 3929805, at *14 (W.D.Pa. Sept. 7, 2012) (substantiating TILA claim, explaining that insurance

that is "force-placed without authorization and in violation of the mortgage agreement ... is no longer exempt from disclosure as part of the finance charge under 12 C.F.R. § 226.4(d)(2)(i) and must be disclosed in accordance with 12 C.F.R. § 226.4(d)(2)(ii)"). Of course, like their breach of contract claim, Plaintiff's TILA claim will ultimately fail or flourish based on whether Plaintiffs can establish the facts they allege.

■ Claims under TILA are subject to a one-year statute of limitations. However, "the statute of limitations in TILA is subject to equitable tolling." *Ellis v. Gen. Motors Acceptance Corp.,* 160 F.3d 703, 708 (11th Cir.1998). "The doctrine of equitable tolling 'saves' a TILA claim where a plaintiff has 'been prevented from [bringing suit] due to inequitable circumstances.' " *Jackson,* 44 F.Supp.3d at 1219, 2014 WL 4179867, at *6 (quoting *Ellis,* 160 F.3d at 706–08). Dismissal of a TILA claim at the pleading stage is appropriate only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980). Here, Plaintiffs allege that Ever-Bank did not disclose the composition of its lender-forced insurance charges to include unearned "kickbacks," and that Ever-Bank actively concealed its "scheme" to inflate those force-placed insurance charges. Compl. ¶¶ 139–141. Accordingly, Plaintiffs may maintain their TILA claims at this stage based on their allegations in the Complaint which support equitable tolling. *See Jackson,* 44 F.Supp.3d at 1219, 2014 WL 4179867, at *6 (upholding plaintiffs' TILA claims, "mindful that 'as a remedial statute, TILA must be construed liberally in favor of the consumer' ") (quoting *Bragg v. Bill Heard Chevrolet, Inc.,* 374 F.3d 1060, 1065 (11th Cir.2004));

*cf. Tello v. Dean Witter Reynolds, Inc.,* 410 F.3d 1275, 1288 & 1288 n. 13 (11th Cir.2005) ("Dismissal under Federal Rule of Civil Procedure 12(b)(6) on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred. At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute.") (citations omitted).

### 8. Plaintiffs' Fiduciary Duty Claim is Insufficiently Pleaded (Count VIII)

Plaintiffs allege that EverBank owes Plaintiffs a fiduciary duty because it held their funds in an escrow account, in part for the purpose of paying insurance premiums, and for which EverBank "receive[d] a greater economic benefit ... than [it] would from a typical escrow transaction." Compl. ¶ 152. Plaintiffs further allege that EverBank violated its fiduciary duties by "not acting in borrowers' best interests when it profited from force placed insurance policies" purchased with escrowed funds and by failing to disclose the "kickback scheme" to Plaintiffs. Compl. at ¶¶ 152–53. Here, Plaintiffs fail to allege with particularity any facts distinguishing their interactions with EverBank from the typical lender-borrower relationship that would give rise to a fiduciary duty capable of being breached.

 The elements of a breach of fiduciary duty claim are: "the existence of a fiduciary duty and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker,* 837 So.2d 348, 353 (Fla.2002); *see also Pension Committee of University of Montreal Pension Plan v. Banc of America Sec., LLC,* 591 F.Supp.2d 586, 589–90 (S.D.N.Y.2008) ("The elements of a claim for breach of fiduciary duty under New York law are breach by a fiduciary, a knowing participation in the breach, and damages.") (quotation omitted); *McMahan v. Deutsche Bank AG,* 938 F.Supp.2d 795, 809 (N.D.Ill. 2013) ("Under Illinois law, a breach of fiduciary duty claim has three elements: (1) that a fiduciary duty exists, (2) that the fiduciary duty was breached, and (3) that such breach proximately caused the injury of which the plaintiff complains.") (quotation omitted).

 Generally, an arms-length lender-borrower relationship implies no fiduciary duties from the lender to the borrower. *See Persaud,* 2014 WL 4260853 at *12 ("[A] lender generally does not owe a fiduciary duty to a borrower under Florida law") (citing *Jaffe v. Bank of Am., N.A.,* 395 Fed.Appx. 583, 590 (11th Cir.2010) and *Capital Bank v. MVB, Inc.,* 644 So.2d 515, 518 (Fla. 3d DCA 1994)); *Sussman v. Weintraub,* 2007 WL 908280, at *4 (S.D.Fla. Mar. 22, 2007) (Florida courts have recognized that "generally, the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities."); *Graham v. Midland Mortg. Co.,* 406 F.Supp.2d 948, 953 (N.D.Ill.2005) ("Under Illinois law, '[a] mortgagor-mortgagee relationship does not create a fiduciary relationship as a matter of law.'"); *Dobroshi v. Bank of Am., N.A.,* 65 A.D.3d 882, 886 N.Y.S.2d 106, 109 (1st Dept.2009) ("[A]n arm's length borrower-lender relationship is not of a confidential or fiduciary nature.").

 Special circumstances may give rise to a fiduciary duty, "includ[ing] where the lender (1) takes on extra services for a customer, (2) receives any greater economic benefit than from a typical transaction, or (3) exercises extensive control." *Mahdavieh v. Suntrust Mort-*

*gage, Inc.*, 2014 WL 1365425, at \*5 (S.D.Fla. Apr. 7, 2014) (quoting *Building Educ. Corp. v. Ocean Bank*, 982 So.2d 37, 41 (Fla. 3d DCA 2008)). *See also Graham*, 406 F.Supp.2d at 953 (under Illinois law, "in some circumstances, a contractual relationship [can turn] into a fiduciary relationship [when] one of the parties places great trust in and relies heavily on the judgment of the other party"); *U.S. Bank Nat. Ass'n v. Ables & Hall Builders*, 696 F.Supp.2d 428, 442 (S.D.N.Y.2010) ("A lender-borrower relationship may give rise to fiduciary duty under New York law where there exists 'a confidence reposed which invests the person trusted with an advantage in treating with the person so confiding, or an assumption of control and responsibility.'") (citing *Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir.1993)). "[F]acts supporting a claim of fiduciary duty must be pled with particularity." *Sussman*, 2007 WL 908280 at \*4 (citing *Parker v. Gordon*, 442 So.2d 273, 275 (Fla. 4th DCA 1983) ("it would be necessary to state with particularity the facts which purportedly created the duty that was breached, so that the court could determine as a matter of law whether there was such a duty")).

▮ Plaintiffs do not identify any conduct by EverBank with regard to establishing and managing escrow accounts for Plaintiffs in connection with their mortgages or their force-placed insurance out of the ordinary in or atypical of a lender borrower relationship which would establish the "special circumstances" of trust and confidence required for a fiduciary duty to exist. To the contrary: Plaintiffs do not allege that EverBank's establishment or maintenance of escrow accounts for Plaintiffs was itself improper or unusual in the context of servicing a home mortgage. Furthermore, Plaintiffs allege that EverBank placed the insurance to protect its *own* collateral and its *own* interests in Plaintiffs' mortgages, and that EverBank

informed Plaintiffs that the force-placed insurance was for EverBank's, and not Plaintiffs', benefit. In *Feaz*, the Eleventh Circuit specifically held that a lender's administration of escrow funds to pay for force-placed insurance does not create a fiduciary relationship. *Feaz*, 745 F.3d at 1110–11. The Seventh Circuit in *Cohen* also rejected the contention that a lender could act with divided loyalties when force-placing insurance explicitly to protect its own interests. *Cohen*, 735 F.3d at 611, 612 n. 4. New York courts have similarly held that "[a] fiduciary relationship does not arise 'simply because the mortgagee makes payments from an escrow account on behalf of the mortgagor.'" *See Miller v. Wells Fargo Bank, N.A.*, 994 F.Supp.2d 542, 556 (S.D.N.Y.2014); *Gorham–DiMaggio v. Countrywide Home Loans, Inc.*, 592 F.Supp.2d 283, 295 (N.D.N.Y.2008). Accordingly, Plaintiffs' claim for breach of fiduciary duty is dismissed. *See Circeo–Loudon v. Green Tree Servicing, LLC*, 2014 WL 4219587, at \*2 (S.D.Fla. Aug. 25, 2014) (relying on *Feaz* and *Cohen* to dismiss breach of fiduciary duty claim where lender used escrow funds to charge borrower for force-placed insurance).

### 9. Plaintiffs' RICO Claims Are Insufficiently Pleaded (Counts IX and X)

Plaintiffs have failed to state a civil claim for violation of RICO under the relevant pleading standards.

▮ To state a civil RICO claim, a plaintiff must sufficiently allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir.2013). Where, as here, the defendants' alleged predicate "pattern of racketeering" activity is based on mail and wire fraud, the plaintiffs must allege the existence of a scheme to defraud and that the defendants

"intentionally participate[d] in a scheme to defraud another of money or property and use[d] the mails or wires in furtherance of that scheme." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir.2010). "Courts have noted that RICO allegations merit particular scrutiny if, as here, the predicate acts are mail and wire fraud, and if the use of mail or wires to communicate is not in and of itself illegal, unlike other predicate acts such as murder or extortion." *Rothstein v. GMAC Mortgage, LLC*, 2013 WL 5437648, at *12 (S.D.N.Y. Sept. 30, 2013) (quoting *Rosenson v. Mordowitz*, 2012 WL 3631308, at *4 n. 3 (S.D.N.Y. Aug. 23, 2012) and citing *Am. Fed. of State, Cnty. and Mun. Emps. Dist. Council 37 v. Bristol–Myers Squibb Co.*, 948 F.Supp.2d 338, 345 (S.D.N.Y.2013)).

■■■■ "[I]n the Eleventh Circuit '[a] scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts reasonably calculated to deceive persons of ordinary prudence.'" *Lockheed Martin Corp. v. Boeing Co.*, 357 F.Supp.2d 1350, 1372 (M.D.Fla.2005) (quoting *United States v. Hasson*, 333 F.3d 1264, 1270–71 (11th Cir. 2003) and citing *Neder v. United States*, 527 U.S. 1, 21, 25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). Plaintiffs must establish that the defendant "had a conscious, knowing intent to defraud and that a reasonably prudent person would have been deceived by its misrepresentations" which amounts to "the same showing of reasonable reliance that is required for establishing common law fraud." *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1306 (11th Cir.2003) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1503 (11th Cir.1991) (concluding that a sophisticated plaintiff's claim of reliance failed in light of undisputed facts showing that he "did not trust [the defendant's] representations and did not act as though he trusted [the defendant]"); *Beck v. Prupis*, 162 F.3d 1090, 1095 (11th Cir.1998)

(stating that a plaintiff must "prove that a reasonable person would have relied on the misrepresentations")).

■■■■ Direct first-party reliance is not an element in a civil RICO claim. *See Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 661, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008) ("a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations"); *Wallace v. Midwest Financial & Mortgage Services, Inc.*, 714 F.3d 414 (6th Cir.2013) ("For RICO purposes, reliance and proximate cause remain distinct—if frequently overlapping—concepts . . . . [A] plaintiff need not show that she relied on any allegedly fraudulent misrepresentations to state a claim . . . [but] need only show use of the mail in furtherance of a scheme to defraud and an injury proximately caused by the scheme."); *Harden Mfg. Corp. v. Pfizer, Inc.*, 712 F.3d 60, 66–67 (1st Cir.2013) ("[D]irect reliance is not an element of proximate cause in a civil RICO cause of action based on mail fraud."). However, to recover for an alleged violation of civil RICO, Plaintiffs must assert that defendants' alleged racketeering activity proximately caused their injuries. *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705, 712 (11th Cir.2014) (a "civil RICO plaintiff must always establish a proximate-causal, 'direct relation' between the injury and injurious conduct at issue"); *Beck v. Prupis*, 162 F.3d 1090, 1095–96 (11th Cir.1998) (holding that to state a civil RICO claim, "the racketeering activity must be more than simply the 'but for' cause of the injury; it must also be the proximate cause").

■■■■ Because Plaintiffs' RICO claims are predicated on allegations of fraud, their allegations must satisfy the heightened pleading requirement of Fed. R.Civ.P. 9(b) and allege: "(1) the precise

statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n,* 605 F.3d at 1291 (citations omitted).[2]

Here, Plaintiffs contend that the misrepresentations and omissions in EverBank's communications with Plaintiffs regarding their force-placed insurance—that the charges were authorized and related to the insurance coverage and not, as alleged, masked kickbacks—were material or reasonably calculated to deceive EverBank's borrowers, and that those misrepresentations or omissions proximately caused Plaintiffs injuries. Plaintiffs' allegations are implausible.

First, Plaintiffs have not stated with particularity how the alleged misrepresentations and omissions were material to the Defendants' alleged scheme to defraud. Plaintiffs have not pleaded with particularity how Defendants' conduct regarding the misrepresented or concealed kickback charges were material to Plaintiffs' decisions not to procure the voluntary insurance coverage required under their mortgage agreements but, instead, to default under their agreements and concede to EverBank's forcibly placed insurance coverage and the ensuing charges. Neither have they stated with particularity how EverBank's communications were reasonably calculated to deceive its borrowers in making their decisions not to obtain coverage and to pay the amounts charged by EverBank as force-placed insurance costs. Plaintiffs admit that EverBank had the right to place hazard coverage and to charge considerably more than what Plaintiffs would have paid had they fulfilled their insurance obligations. They admit that Defendants warned and disclosed to Plaintiffs that their voluntary coverage lapsed and when it lapsed; that they had an obligation to maintain coverage; that if they did not maintain coverage on their own, EverBank would obtain a policy on their property; that the force-placed policy would cost substantially more; that the force-placed policy would inure to EverBank's benefit; and that the increased amount would be charged by EverBank to Plaintiffs.[3] "The Court cannot see how

**2.** In addition to the Rule 8(a) plausibility pleading requirement, Rule 9(b) imposes a heightened pleading standard for claims sounding in fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED.R.CIV.P. 9(b). Rule 9(b) thus forces a plaintiff to "offer more than mere conjecture," *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.,* 290 F.3d 1301, 1313 (11th Cir.2002), and "requires that a complaint plead facts giving rise to an inference of fraud." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.,* 287 Fed.Appx. 81, 86 (11th Cir.2008). Generally, "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Clausen,* 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001)); *see also Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1262 (11th Cir.2006) (Rule 9(b) requires that the complaint state the "who, what, when where, and how" of the alleged misconduct).

**3.** EverBank has submitted several documents—such as the letters of communication between Defendants and Plaintiffs—in support of its Motion. The Court may consider documents referred to in Plaintiffs' Complaint that are central to their claims and whose authenticity is undisputed without converting EverBank's Motion into one for summary judgment. *See Wilchombe,* 555 F.3d at 959; *Maxcess,* 433 F.3d at 1340; *Fin. Sec. Assur., Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284

letters that warn of an imminent bad deal and urge one to seek better could possibly be calculated to deceive anyone." *Weinberger v. Mellon Mortgage Co.*, 1998 WL 599192, at *5 (E.D.Pa. Sept. 10, 1998) (dismissing RICO claims against lender based on allegations of "illegal kickback scheme to defraud mortgagors").

Perhaps more important, Plaintiffs have not plausibly alleged that EverBank's "scheme" proximately caused injury to Plaintiffs. EverBank's alleged scheme consisted of urging Plaintiffs to adhere to their obligations and to obtain coverage or risk being charged significantly more for less coverage—and then, allegedly, including as some fraction of the charge for that coverage unearned commissions masked as authorized costs. Taking the allegations as true, it is simply not plausible that Plaintiffs' injuries in paying for the unauthorized charges were proximately caused by Defendants' allegedly improper scheme. *See Gustafson v. BAC Home Loans Servicing, LP*, 2012 WL 7071488, at *7 (C.D.Cal. Dec. 26, 2012) (dismissing RICO claims against lender where lender warned borrowers that they would be charged for force-placed insurance costs and that lender and its affiliates would profit from the insurance placement). Plaintiffs have not even alleged with the requisite plausibility that, but for Ever-Bank's allegedly fraudulent conduct regarding the force-placed insurance charges—which added only a fraction to the insurance charges that Plaintiffs readily admit would have in any event been significantly more expensive than market-available coverage—Plaintiffs would not

have paid the full force-placed insurance charges but, rather, would have opted either to now get their own insurance (as they were required but failed to do in the first place and after repeated admonition to do so) or contest the fractional, unauthorized charge. *Contra Cannon v. Wells Fargo Bank, N.A.*, 2014 WL 324556, at *3 (N.D.Cal. Jan. 29, 2014) (finding that "it is plausible that Plaintiffs would not have paid, or would have contested, the premiums for the force-placed insurance, if Defendants had disclosed that the premiums included unearned kickbacks rather than earned commissions"). Confronted with RICO claims based on a nearly identical set of alleged facts, a court in this District recently determined the allegations to be "senseless." *Circeo–Loudon*, 2014 WL 4219587, at *3.

> Drawn to a logical conclusion, Plaintiffs' theory of damages amounts to a claim that if they knew the charges were kickbacks, [plaintiffs] would have breached a contractual duty to pay [the force-placed insurance charges]. Losing an opportunity to breach a contract cannot constitute a cognizable fraud harm.

*Id.*

■■■ Simply put, Plaintiffs have not plausibly alleged that their injuries were proximately caused by EverBank's alleged scheme. This determination does not impose a reliance requirement on pleading a civil RICO claim. *Contra Rothstein*, 2013 WL 5437648, at *14. It simply holds Plaintiffs to their requirement to plausibly plead "a proximate-causal, 'direct relation' between the injury and injurious conduct at issue." *Simpson*, 744 F.3d at 712. Because they have not done so, Plaintiffs' RICO claims are dismissed.[4]

(11th Cir.2007). However, in light of the pleading standard and Defendants' burden on a motion to dismiss, the Court has considered and construed any information not contained in or attached to the Complaint only as admitted and characterized by Plaintiffs in their briefing and at oral argument.

4. Plaintiffs' failure to state a claim under RICO section 1962(c) is equally fatal to their adjunct claim under section 1962(d). "Plaintiffs cannot state a claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th

### 10. Avelar–Lemus' NYDPA Claim is Insufficiently Pleaded (Count XI)

 The NYDPA prohibits all "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. G.B.L. § 349(a). "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.,* 574 F.3d 64, 74 (2d Cir.2009); *see also Stutman v. Chem. Bank,* 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (N.Y.2000) ("A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."). "The causation element is essential: The plaintiff must show that the defendant's material deceptive act caused the injury." *Newman v. RCN Telecom Servs., Inc.,* 238 F.R.D. 57, 74 (S.D.N.Y.2006); *see also Pettitt v. Celebrity Cruises, Inc.,* 153 F.Supp.2d 240, 266 (S.D.N.Y.2001) (same, citing *Stutman,* 95 N.Y.2d at 29, 709 N.Y.S.2d 892, 731 N.E.2d 608).

 Avelar–Lemus' NYDPA claim fails for the same reason Plaintiffs' RICO claims are deficient: he has not plausibly alleged that EverBank's conduct caused the complained of injuries. Plaintiffs argue that "the conduct alleged by Plaintiffs is likely to mislead a reasonable consumer as to the amounts of [ ] insurance coverage required, as well as the appropriateness of the [EverBank's] process of selecting and exchanging financial benefits with a force-placed insurance provider." *Hoover v.*

*HSBC Mortgage Corp. (USA),* 9 F.Supp.3d 223 (N.D.N.Y.2014); *see also Casey,* 915 F.Supp.2d at 266 (kickback scheme would likely mislead a reasonable consumer as to the amount of flood insurance he was required to maintain under the contract). Regardless, Plaintiffs have "failed to plead how these allegedly deceptive acts or practices caused [their] alleged injury, namely, paying more than [they] should have paid for force-placed insurance." *Miller v. Wells Fargo Bank, N.A.,* 994 F.Supp.2d 542, 558 (S.D.N.Y.2014). Taking the allegations as true, Plaintiffs paid more than was appropriate for force-placed insurance because EverBank charged them inflated costs—not because EverBank misled Plaintiffs by misrepresenting or omitting anything about the internal pricing and mechanics of the force-placed insurance charges. Without plausibly alleging the requisite causation, Plaintiffs cannot state a claim under the NYDPA.

### 11. Plaintiffs Have Not Failed to Join a Necessary Party

 In its Motion, EverBank argued that Plaintiff Wilson's wife is a necessary party to this action, and that, due to Plaintiffs' failure to join her to this action, Wilson's claims should be dismissed pursuant to Rules 12(b)(7) and 19. However, because the Wilsons' interests are aligned and their legal claims are the same, the current composition of the parties to this case does not risk any inconsistent judgment or multiple recoveries. *See Jackson,* 44 F.Supp.3d at 1220, 2014 WL 4179867 at *7 (rejecting same argument for joinder and dismissal in force-placed insurance class action). EverBank admitted as much at the hearing on the Motions. According-

Cir.2000); *see also Efron v. Embassy Suites (Puerto Rico), Inc.,* 223 F.3d 12, 21 (1st Cir.

2000) (same).

ly, Wilson's spouse need not be joined to this action.

## C. The Motion on Jurisdiction

Separate from each of their Motions to Dismiss, ASIC and SGIC (together, the "Insurer Defendants") have moved to dismiss the nationwide class allegations contained in Counts IV and VII of the Complaint for lack of subject matter jurisdiction, pursuant to Rules 12(b)(1) and 12(h)(3). They argue that Plaintiffs lack Article III standing to assert state common law claims for unjust enrichment and tortious interference under the laws of the states where they do not reside and in which they do not claim to have been injured. The Insurer Defendants urge the Court to address this issue now, rather than defer their standing challenge until the class certification stage.

■■■■ One element of the case-or-controversy requirement under Article III of the United States Constitution is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd,* 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). Specifically, to satisfy Article III's standing requirement, a plaintiff must establish three criteria:

First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that injury will be redressed by a favorable decision.

*Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 980 (11th Cir.2005) (quotations omitted). "The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Article III standing is jurisdictional and, therefore, a threshold, inquiry. *Bochese,* 405 F.3d at 974; *see also Florida Ass'n of Med. Equip. Dealers v. Apfel,* 194 F.3d 1227, 1230 (11th Cir.1999) ("every court has an independent duty to review standing as a basis for jurisdiction at any time, for every case it adjudicates.").

■■■■ A named plaintiff "in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone—not for himself, and not for any other member of the class." *Griffin v. Dugger,* 823 F.2d 1476, 1483 (11th Cir. 1987). "It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Prado–Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1280 (11th Cir. 2000).

■■■■ However, following *Klay v. Humana, Inc.,* 382 F.3d 1241 (11th Cir.2004), provided that the named plaintiff articulates a redressable injury suffered as a result of the defendant's conduct and that her claims are based on principles of law that are uniform among the states that are involved, courts in this Circuit permit named plaintiffs to represent class members with claims arising under other states' laws. *See Klay,* 382 F.3d at 1262

("if a claim is based on a principle of law that is uniform among the states, class certification is a realistic possibility"); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666 (S.D.Fla.2011) (certifying nationwide class with common law claims represented by Plaintiffs from New York, California, and Washington, finding "Plaintiffs' claims arise out of the same course of conduct and are based on the same legal theories as those of the absent class members").

■■■■■ As the Supreme Court has explained, it is appropriate to defer standing objections until after class certification where certification issues are " 'logically antecedent' to Article III concerns." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999). Thus, there is a strong consensus in favor of "treat[ing] class certification as logically antecedent to standing where class certification is the source of the potential standing problems." *In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, 2006 WL 3039993, at *2 (S.D.N.Y. Oct. 25, 2006); *see also In re Bayer Corp. Combination Aspirin Prods. & Mktg. Sales Practices Litig.*, 701 F.Supp.2d 356 (E.D.N.Y.2010) ("Whether the named plaintiffs have standing to bring suit under each of the state laws alleged is 'immaterial' because they are not bringing those claims on their own behalf, but are only seeking to represent other, similarly situated consumers in those states."); *In re Polyurethane Foam Antitrust Litig.*, 799 F.Supp.2d 777, 806 (N.D.Ohio 2011) (explaining that whatever standing issues may arise as a result of the assertion of parallel state common law claims will be resolved in considering class certification). This makes sense. Where a named plaintiff has established individual standing to bring specific claims against a defendant in his or her own right, but asserts parallel common law claims arising under different states' laws on behalf of a putative class, the plaintiff is not "attempting to piggy-back on the injuries of the unnamed class members." *Winfield v. Citibank, N.A.*, 842 F.Supp.2d 560, 574 (S.D.N.Y.2012). Thus:

> the issue is not whether the named plaintiff has standing to sue the defendant, but whether his or her injuries are sufficiently similar to those of the purported class to justify the prosecution of a nationwide class action, which is properly determined at the class certification stage, when th[e] [c]ourt may consider commonality and typicality issues with respect to the named plaintiffs and other putative class members.

*In re DDAVP Indirect Purchaser Antitrust Litigation*, 903 F.Supp.2d 198, 214 (S.D.N.Y.2012) (quotation omitted).

By contrast, courts have addressed lack of standing claims prior to considering certification and dismissed claims asserted by the named plaintiff under state statutory schemes enacted to protect the interests or citizens of a particular state, where that named defendant had no connection to the statute at issue. *See, e.g., Renzi v. Demilec (USA) LLC*, 2013 WL 6410708, at *3 (S.D.Fla. Dec. 9, 2013) (holding that Florida plaintiff lacked standing to bring state statutory claims parallel to her FDUTPA claim on behalf of a national class because "plaintiffs may only assert a state statutory claim if the named plaintiff resides in that state"); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F.Supp.2d 1365, 1371–72 (S.D.Fla.2001) (named plaintiffs could not pursue antitrust claims under state statutes from states in which they did not reside because "[n]one of these statutes authorizes antitrust actions based on commerce in other states"); *Stone v. Crispers Restaurants, Inc.*, 2006 WL 2850103, at *1–2 (M.D.Fla. Oct. 3, 2006) (named plaintiff himself lacked standing to

pursue claims under wage law of his or other states).

Here, the named Plaintiffs each have standing to assert their common law unjust enrichment and tortious interference claims under the laws of Florida, New York and Illinois, respectively. Indeed, the Insurer Defendants do not challenge their individualized standing. Rather, they argue that Plaintiffs are precluded, jurisdictionally, from bringing parallel claims under the laws of the other forty-seven states of the Union, and should be limited to asserting claims only on behalf of Florida, New York and Illinois citizens. The Court declines to preempt the class certification analysis by considering the standing issue at this logically precedent stage in the litigation. Plaintiffs are not attempting to piggyback on the claims of unnamed putative class members or gain access to state statutes whose protection they do not warrant, but rather, to seek redress for what they allege to be common injuries suffered by EverBank borrowers, nationwide. The Court's consideration of the standing issue as a precursor to class certification is not compelled either by precedent, logic, or case management considerations. *Contra Xi Chen Lauren v. PNC Bank, N.A.*, 296 F.R.D. 389, 391 (W.D.Pa.2014) (finding that "deferral would trigger extensive discovery costs and delay").

In addition, the relief requested by the Insurer Defendants—dismissal of the putative nationwide class claims prior to the Court's consideration of class certification under Rule 23—would in effect impose a requirement that, in a multistate class action involving state common law claims, there be a named plaintiff from every state. Not only is that contrary to established practice and highly inefficient, but it "conflate[s] the issue of whether the named Plaintiffs have standing to bring their individual claims with the secondary issue of whether they can meet the requirements to certify a class under Rule 23." *Ramirez v. STi Prepaid LLC,* 644 F.Supp.2d 496, 505 (D.N.J.2009); *see also In re Processed Egg Prods. Antitrust Litig.*, 851 F.Supp.2d 867, 886–887 (E.D.Pa. 2012) (Whether plaintiffs were injured under other states' laws "is beside the point" because "[a]n Article III standing inquiry simply does not require considering the elements of a state claim as 'jurisdictional prerequisites.' ").

Accordingly, the Motion on Jurisdiction is denied.

### D. The ASIC and SGIC Motions to Dismiss

#### 1. *Cohen* and *Feaz* Do Not Preclude Plaintiffs' Claims Against the Insurer Defendants

ASIC and SGIC[5] argue that the gravamen of *Cohen* and *Feaz* mandate dismissal of Plaintiffs claims against them. They focus on the "disclosures" provided to Plaintiffs regarding their obligation to maintain hazard insurance and, in the alternative, to bear the costs of the lender-placed insurance. As discussed above, *see* section II.B.2, *supra*, those cases are not dispositive of Plaintiffs' claims here.

---

5. As the Insurer Defendants note, despite the fact that the individual Plaintiffs only received force-placed insurance coverage from one of the two insurers, Plaintiffs have not separately asserted claims against ASIC and SGIC. Plaintiffs Wilson and Avelar–Lemus allege that the policies placed on their properties were issued by ASIC, not SGIC. Compl. ¶¶ 51, 63–64, 66. The Crosses allege that the policies placed on their property were issued by SGIC, not ASIC. *Id.* ¶¶ 71–72. To the extent the individual Plaintiffs assert claims against an Insurer Defendant that did not issue a policy placed on their property, that claim is dismissed. The Court otherwise construes the Complaint as properly asserting claims by Wilson and Avelar–Lemus against ASIC, and by the Crosses against SGIC.

Again, Plaintiffs allege that the portion of the force-placed insurance costs passed on to them included costs beyond the cost of coverage—unearned commissions that, in actuality, represent amounts kicked back from ASIC and SGIC to EverBank, costs truly associated with insuring an entire loan portfolio and not the individual mortgaged property, and risk-free reinsurance costs. As to the "disclosures," for example, Defendants never notified Plaintiffs that a portion of their force-placed insurance premiums represented unearned commissions that were then "kicked back" from ASIC and SGIC to EverBank. *See Hamilton,* 6 F.Supp.3d at 1311 (rejecting motion to dismiss on same argument). The allegations here distinguish Plaintiffs' claims from those found lacking in *Cohen* and *Feaz.*

### 2. The Filed Rate Doctrine Does Not Bar Plaintiffs' Claims Against the Insurer Defendants At This Stage

Both ASIC and SGIC maintain that the filed-rate doctrine bars all the claims by Plaintiffs against them here. Because the Court declines to construe at this stage in the litigation Plaintiffs' allegations to directly challenge agency-approved insurance rates, the filed-rate doctrine does not apply.

■ The filed-rate doctrine holds that "where a regulated entity is required to file its rates with a governmental agency charged with authority to regulate those rates, an individual is barred from attacking those rates in a civil action...." *Horwitz v. Bankers Life & Cas. Co.,* 319 Ill. App.3d 390, 253 Ill.Dec. 468, 745 N.E.2d 591, 596 (2001); *see also Goldwasser v. Ameritech Corp.,* 222 F.3d 390, 402 (7th Cir.2000) ("[T]he filed rate doctrine ... bars courts from reexamining the reasonableness of rates that have been filed with regulatory commissions...."); *Taffet v. S. Co.,* 967 F.2d 1483, 1494 (11th Cir.1992) ("Where the legislature has conferred power-

er upon an administrative agency to determine the reasonableness of a rate, the rate-payer 'can claim no rate as a legal right that is other than the filed rate ....'") (quoting *Montana–Dakota Utils. Co. v. Nw. Public Serv. Co.,* 341 U.S. 246, 251, 71 S.Ct. 692, 95 L.Ed. 912 (1951)). Put another way, the filed-rate doctrine renders a filed-rate approved by the governing regulatory agency "per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland Ltd. v. NYNEX Corp.,* 27 F.3d 17, 18 (2d Cir.1994).

The Insurer Defendants contend that the filed-rate doctrine precludes Plaintiffs' claims because the rates used to calculate the premiums charged by ASIC and SGIC to EverBank and then passed on to and paid by Plaintiffs were approved by Florida, New York and Illinois regulators. That is, by alleging that the insurance premiums charged to Plaintiffs were excessive, artificially inflated, and comprised in part of unearned kickbacks, Plaintiffs are asking this Court to examine and determine the reasonableness of the filed rates.

### a. Plaintiffs Do Not Directly Challenge the Approved Rates

■ "Courts in this and other districts have rejected this argument, however, declining to apply the doctrine to lenders, servicers, or insurers in the force-placed insurance context." *Jackson,* 44 F.Supp.3d at 1215, 2014 WL 4179867 at *3 (finding that bank was not subject to administrative oversight by state insurance commissions and that, therefore, filed-rate doctrine was inapplicable). As several courts have recently concluded, "plaintiffs' claims are not barred by the filed-rate doctrine [where they do] not challenge the rates filed by insurers [but r]ather challenge[ ] the manner in which Defendants

select insurers, the manipulation of the force-placed insurance process, and the impermissible kickbacks that were included in the premiums." *Kunzelmann v. Wells Fargo Bank, N.A.*, 2012 WL 2003337, at *3 (S.D.Fla. June 4, 2012); *Abels*, 678 F.Supp.2d at 1277 (rejecting application of filed-rate doctrine based on plaintiffs' construction of their claim not as challenging the approved rate but rather defendants' collusion to charge them a particular rate); *Simpkins v. Wells Fargo Bank*, 2013 WL 4510166, at *14 (S.D.Ill. Aug. 26, 2013) ("plaintiffs are challenging the lawfulness and purpose of payments that [the bank] received in the form of commissions, kickbacks, or other financial benefits, pursuant to several alleged pre-arranged agreements designed to maximize profits for defendants" and thus "should not be barred under the filed rate doctrine from challenging conduct which is not otherwise addressed by a governing regulatory agency"); *Hoover*, 9 F.Supp.3d at 238 (rejecting application of filed-rate doctrine where plaintiffs "d[id] not challenge the rates charged by Defendants (as opposed to challenges to allegedly improper conduct underlying the rates, such as kickbacks)").

The Insurer Defendants argue, in effect, that Plaintiffs' construal of its Complaint to challenge only the manner in which Defendants' arrived at the insurance charges and not to challenge the filed-rates themselves is merely semantic. By attacking the composition of the filed-rate and alleging that some portion of the ap-proved rate passed on to them was an unearned kickback, Plaintiffs necessarily challenge the reasonableness of the rates—which included the alleged kickbacks—approved by state regulators. *See, e.g., Uniforce Temp. Pers., Inc. v. Nat'l Council on Comp. Ins., Inc.*, 892 F.Supp. 1503, 1512 (S.D.Fla.1995) ("In order for this Court or a jury to award damages, it would be necessary to measure the difference between the properly approved ... insurance rates paid by plaintiffs and those mythical rates which would have been applicable but for the defendants' concerted activity. This undertaking is not within the province of the courts but should reside with the respective state regulators with authority over rate-setting."); *Decambaliza v. QBE Holdings, Inc.*, 2013 WL 5777294, at *7 (W.D.Wis. Oct. 25, 2013) (plaintiffs' "focus[ ] on the lawfulness and purpose of the benefits that defendants derived from the excessive premiums and not on what constitutes a reasonable rate" was an "illusory distinction because the alleged fraud necessarily implicates the reasonableness of the filed rates").

However, the facts and claims alleged in the Complaint must be read in a light most favorable to Plaintiffs.[6] Plaintiffs state that they do not challenge the reasonableness of the filed rates themselves, but rather what they allege to be Defendants' manipulation of the force-placed insurance market to charge them for unearned services unrelated to the actual costs of their

---

6. This Court agrees with several others that have recently addressed the issue in "determin[ing] that the filed rate argument is a defense on the merits, rather than a challenge to subject matter jurisdiction." *Hoover*, 9 F.Supp.3d 223; *Curtis v. Cenlar FSB*, 2013 WL 5995582, at *2 (S.D.N.Y. Nov. 12, 2013) ("the defendants' [filed rate] argument [is] not properly understood as [a] standing argument and this motion will be decided under Rule 12(b)(6)"); *Roberts v. Wells Fargo Bank*, 2013 WL 1233268, at *9 (S.D.Ga. Mar. 27, 2013) ("[T]he Court finds it prudent to address the filed rate doctrine in the context of a 12(b)(6) motion"); *Perryman v. Litton Loan Servicing, LP*, 2014 WL 4954674, at *6 (N.D.Cal. Oct. 1, 2014) (noting, without ruling on the issue, that the weight of recent authority considers the filed-rate doctrine a defense on the merits and not a jurisdictional challenge); *but see Morales v. Attorneys' Title Ins. Fund, Inc.*, 983 F.Supp. 1418, 1429 (S.D.Fla.1997) ("At the core of the filed rate doctrine is the issue of standing.").

insurance premiums. As such, the filed-rate doctrine does not bar their claims. *See, e.g., Ellsworth v. U.S. Bank, N.A.,* 908 F.Supp.2d 1063, 1082–83 (N.D.Cal.2012) (finding filed-rate doctrine inapplicable to immunize ASIC where plaintiff "d[id] not challenge the rates or the premiums he paid but instead challenge[d] the alleged kickbacks," explaining that "[j]ust because the damages are based on increased costs incurred as a result of the alleged kickback scheme does not transform a challenge to conduct and practices into a challenge to the premiums"); *Rothstein,* 2013 WL 5437648 at *8 (rejecting application of filed-rate doctrine on motion to dismiss where plaintiffs did not allege that insurers' rates were *per se* unreasonable but the challenged the manner in which they were imposed on them by their lenders).

The inapplicability of the filed-rate doctrine at this stage in the litigation does not, however, foreclose Defendants' access to its defense. In denying the ASIC and SGIC's Motions to Dismiss, the Court relies on Plaintiffs' characterization of their claims as not challenging the actual insurance rates but, rather, the manner in which Defendants colluded to inflate the insurance charges and the consequent unearned kickbacks and risk-free reinsurance costs. The Court's consideration will not be as limited when not based solely on the pleadings. *See, e.g., Kunzelmann v. Wells Fargo Bank, N.A.,* 2013 WL 139913, at *11 (S.D.Fla. Jan. 10, 2013) (applying filed-rate doctrine to deny motion for class certification, after declining to dismiss complaint based on plaintiff's allegations that "he was not challenging the actual insurance rates, but rather bundled administrative costs and unearned kickbacks").

#### b. Plaintiffs Are Not The Ratepayers

Additionally, Plaintiffs are not the "ratepayers" for whom the commercial-line rates applied by ASIG and SGIC were approved and who would, therefore, be barred from challenging those rates as unreasonable under the filed-rate doctrine. As Plaintiffs allege and as counsel for the Insurer Defendants described in detail at oral argument on the Motions, the rates which eventually informed the insurance costs charged to Plaintiffs were approved in the context of the group master policies procured by EverBank from ASIC and SGIC. That is, *EverBank,* not Plaintiffs, in the ratepayer on the force-placed policies—at least with respect to the filed-rate doctrine. As one court recently explained, the question presented is "whether [the bank's] purchase and forced-imposition of the rates that [the insurer] filed and had approved is functionally equivalent to Plaintiffs purchasing hazard insurance from [the insurer] directly." *Rothstein,* 2013 WL 5437648 at *6. The court concluded that it was not:

> Drawing all reasonable inferences in the light most favorable to Plaintiffs, it would be fair to infer from these facts that the filed and approved rates were not meant to be directly applicable to individual residential mortgage loan borrowers, like Plaintiffs, and that these rates were not approved for the direct application to such individuals. Defendants have provided no authority to support the contention that the Court can, should, or must grant 'per se reasonable' status to rates designed and approved for lenders when those rates are secondarily billed by the lenders to borrowers instead.

*Id.,* 2013 WL 5437648 at *9. Because Plaintiffs are not the ratepayers on the insurance policies in question, the filed-rate doctrine does not apply to bar their claims here.

#### 3. Wilson's Claims Are Not Barred By His Failure to Undertake Administrative Remedies

ASIC contends that Plaintiff Wilson's claims are barred by his failure to

exhaust administrative remedies. Florida law provides an administrative complaint procedure for "[a]ny person aggrieved by any rate charged, rating plan, rating system, or underwriting rule followed or adopted by an insurer" and allows such persons to "make written request of the insurer or rating system to review the manner in which the rate, plan, system, or rule has been applied with respect to insurance afforded her or him." Fla. Stat. § 627.371. ASIC maintains that section 627.371 provides the exclusive provides the exclusive manner of challenging insurance rates and premiums under Florida law. *See Int'l Patrol & Detective Agency Co. v. Aetna Cas. & Sur. Co.,* 419 So.2d 323, 324 (Fla.1982).

ASIC's argument fails for the same reasons the Insurer Defendants' filed-rate doctrine defense fails, at this stage. "[T]he Court has accepted, for now, [Plaintiffs'] assertion that [they are] not challenging ASIC's rates. Thus, § 627.371 would not apply." *Montoya v. PNC Bank, N.A.,* 2014 WL 4248208, at *6 (S.D.Fla. Aug. 27, 2014). *See also Abels,* 678 F.Supp.2d at 1278 (rejecting application of section 627.371 where plaintiffs did not complain of an excessive insurance rate but that defendants acted unlawfully in manipulating the market and setting the particular rate at issue).

Furthermore, "the plain text of the statute makes clear that the remedy provided by § 672.321 is available to plaintiffs claiming violations of Florida's insurance code." *Montoya,* 2014 WL 4248208 at *6. Plaintiffs do not allege a violation of Fla. Stat. Ch. 627. Thus, the administrative remedy is inapplicable.

### 4. Plaintiffs Have Stated Claims for Unjust Enrichment Against the Insurer Defendants (Count IV)

ASIC and SGIC argue for dismissal of Plaintiffs' unjust enrichment claims for three reasons: (a) no cause of action in quasi-contract exists where the parties' relationship is governed by an express contract; (b) Plaintiffs have failed to allege conferral of a direct benefit on the Insurer Defendants; and (c) Plaintiffs have not alleged facts to support the conclusion that it would be inequitable for the Insurer Defendants to retain the benefit allegedly conferred. The Court will address each argument in turn.

### a. Existence of an Express Contract Bars Only Avelar–Lemus' Claim

■ As discussed above, *see* section II.B.5, *supra,* under Florida law, an "unjust enrichment claim [is] precluded by the existence of an express contract between the parties concerning the same subject matter." *Diamond "S" Dev. Corp.,* 989 So.2d at 697. New York and Illinois law, similarly, will not imply a contract to sustain a claim for unjust enrichment where an express contract governs the same subject matter. *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.,* 448 F.3d 573, 586 (2d Cir.2006) ("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement.") (citations omitted); *Cohen,* 735 F.3d at 615 ("In Illinois, recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant.") (citations omitted). New York law differs, however, in holding "that claims for unjust enrichment may be precluded by the existence of a contract governing the subject matter of the dispute even if one of the parties to the lawsuit is not a party to the contract." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.,* 837 F.Supp.2d 162, 202 (S.D.N.Y.2011) (citations omitted).

■ Here, the Insurer Defendants maintain that their relationship with Plaintiffs and the subject matter of Plaintiffs

claims' are governed by Plaintiffs mortgage agreements *and* the force-placed insurance policies covering their properties.

 First, the Insurer Defendants are not parties to the Plaintiffs' mortgage agreements, and thus, under Florida and Illinois law, those agreements do not govern Plaintiffs' relationship with the Insurer Defendants. *See, e.g., Kowalski v. Jackson Nat. Life Ins. Co.*, 981 F.Supp.2d 1309, 1319 (S.D.Fla.2013) (unjust enrichment claim available against non-party to governing insurance contract); *Cordes & Co., LLC v. Mitchell Companies, LLC*, 605 F.Supp.2d 1015, 1024 (N.D.Ill.2009) (unjust enrichment claim not barred where contract did not govern party requesting dismissal). However, under New York law, Plaintiff Avelar–Lemus' unjust enrichment claim against SGIC cannot stand in the face of his mortgage agreement, any more than his unjust enrichment claim can stand against EverBank. *See* section II.B.5, *supra*. That individual claim must, therefore, be dismissed.

Second, Plaintiffs' claims are not based on the master or individual insurance policies that covered their properties. Rather, they challenge Defendants' alleged scheme to inflate the costs of those policies and charge Plaintiffs for costs not associated with their coverage. Plaintiffs' allegations, at least as pled, are beyond the scope of their force-placed insurance policies. As such, their unjust enrichment claims will survive. *See AutoNation, Inc. v. GAIN-Systems, Inc.*, 2009 WL 1941279, at *4–5 (S.D.Fla. July 7, 2009) (denying motion to dismiss claims for unjust enrichment and quantum meruit even though the parties had entered into a contract because complaint alleged matters outside the scope of the contract); *Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F.Supp.2d 1354, 1365–66 (S.D.Fla.2009) (refusing to dismiss an unjust enrichment claim when "reasonable inferences drawn from the Complaint demonstrate there may be an inadequate remedy at law as to some of Defendant's alleged misconduct"); *Stevens v. Interactive Fin. Advisors, Inc.*, 2012 WL 6568236, at *6 (N.D.Ill. Dec. 17, 2012) (denying motion to dismiss where unjust enrichment claim arguably fell outside scope of express contract); *Ercor Corp. v. N. Bldg. Co.*, 2010 WL 1729482, at *4 (N.D.Ill. Apr. 27, 2010) (denying summary judgment where movant did not demonstrate that unjust enrichment claim fell within scope of express contract). In any event, it is premature to determine the scope of the force-placed insurance policies which have not been placed before the Court by Plaintiffs. *See Casey*, 915 F.Supp.2d at 264 (finding it premature on motion to dismiss to determine whether mortgage agreements cover the relevant subject matter of plaintiffs' unjust enrichment claim).

**b. Plaintiffs Have Sufficiently Alleged Conferral of a Direct Benefit on ASIC**

 Under Florida law, no unjust enrichment claim will lie unless the plaintiff conferred a direct benefit on the defendant. *See Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Fla., N.A.*, 667 So.2d 876, 879 (Fla. 3d DCA 1996) (conferral of direct benefit required); *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So.2d 322, 331 (Fla. 5th DCA 2007) (same); *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir.2012) (dismissing unjust enrichment claim where benefit conferred was too indirect); *see also In re Processed Egg Products Antitrust Litig.*, 851 F.Supp.2d 867, 928–29 (E.D.Pa.2012) ("Florida law allows unjust enrichment claims to arise from the conferral of an indirect benefit.").

However, several courts have distinguished direct contact, which is not required to state a claim for unjust enrichment, from conferral of a direct benefit,

which is, and have permitted unjust enrichment claims to stand precisely in the force-placed insurance context where the plaintiff alleges conferral of a benefit on a defendant through an intermediary. *See Hamilton v. Suntrust Mortgage Inc.*, 6 F.Supp.3d 1312, 1317 (S.D.Fla.2014) (holding, in force-placed insurance context, that plaintiffs had sufficiently alleged conferral of direct benefit on insurers); *Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4901346, at *5 (S.D.Fla. Oct. 14, 2011) ("It would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary before being conferred on a defendant."); *Ulbrich v. GMAC Mortgage, LLC*, 2012 WL 3516499, at *2 (S.D.Fla. Aug. 15, 2012) ("direct contact between [defendant] and Plaintiff is not required to find that [defendant] directly benefited"); *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F.Supp.2d 1269, 1288 (S.D.Fla.2013) ("There are several recent cases in this district that permit an unjust enrichment claim to stand where the benefit is conferred through an intermediary, pointing out that direct contact, or privity, is not the equivalent of conferring a direct benefit.").

 Furthermore, "[w]hether [Defendants] did or did not receive a direct benefit from Plaintiff is a question of fact that cannot be resolved at the motion to dismiss stage...." *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F.Supp.2d 1213, 1229 (S.D.Fla.2009). The decision in *Abels v. JPMorgan Chase Bank, N.A.*, 678 F.Supp.2d 1273 (S.D.Fla. 2009), is on point. There, the defendant bank contended that it received no benefit from the plaintiffs because, although it demanded reimbursement of a force-placed insurance payment, plaintiffs had refused to pay. Plaintiffs argued that because the unpaid insurance premiums were added to the outstanding balance of their mortgages, defendant accrued a benefit for unjust

enrichment purposes. The court denied defendant's motion to dismiss, holding that "[a]lthough the term 'benefit' has not been specifically defined by Florida courts, if Plaintiffs have alleged that they conferred a benefit, whether a benefit was actually conferred is a factual question that cannot be resolved on a motion to dismiss." *Id.* at 1279.

Either way, Plaintiffs' unjust enrichment claim against ASIC survives a motion to dismiss.

## c. Plaintiffs Have Sufficiently Alleged That It Would Be Inequitable for the Insurer Defendants to Retain the Benefits Allegedly Conferred

A viable claim for unjust enrichment under Florida and Illinois law must assert that "defendant's acceptance and retention of the benefit under circumstances [ ] make[s] it inequitable for him to retain it without paying the value thereof." *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir.2009) (citing *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2d DCA 2006)); *see also People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill.2d 473, 180 Ill.Dec. 271, 607 N.E.2d 165, 177 (1992) ("To recover under [unjust enrichment], plaintiffs must show that defendant voluntarily accepted a benefit which would be inequitable for him to retain without payment."). The Insurer Defendants contend that the conditions alleged here do not suggest that it would be unjust or inequitable for them to retain the benefits allegedly conferred by Plaintiffs. They stress that Plaintiffs were obligated but failed to maintain voluntary coverage and were required to pay the force-placed insurance costs. Further, the Insurer Defendants did, in fact, provide coverage which they maintain conferred "tangible benefits" on Plaintiffs. SGIC Mtn. at 13.

Courts presiding over force-placed insurance class actions have consistently re-

jected this argument. *See Hamilton,* 6 F.Supp.3d at 1318–1319 (allegations that defendant insurers colluded to "force-place excessively-priced insurance as part of an elaborate scheme to maximize profit" was sufficiently inequitable despite the fact that "plaintiffs were aware of the consequences of failing to maintain their own insurance, but they also received 'valuable' coverage"); *Persaud,* 2014 WL 4260853 at *14 ("Defendants' alleged retention of benefits, including inflated premiums, commissions, and service fees, would be inequitable."); *Cannon v. Wells Fargo Bank N.A.,* 917 F.Supp.2d 1025, 1053 (N.D.Cal.2013) ("That the force-placed insurance was triggered by Plaintiff's conduct does not negate allegedly inequitable conduct by Defendants."). So too here, Plaintiffs have sufficiently alleged that it would be inequitable for the Insurer Defendants to retain the benefits conferred through Defendants' kickback "scheme."

### 5. Plaintiffs State a Claim For Tortious Interference With A Business Relationship (Count VII)

 The elements of a claim for tortious interference with a business relationship are, for present purposes, the same under Florida, New York and Illinois law. To state a claim for tortious interference under Florida law, "a plaintiff must show: (1) the existence of a business relationship; (2) that defendant had knowledge of the relationship; (3) the defendant intentionally and unjustifiably interfered with the relationship; and (4) the plaintiff suffered damage as a result." *Williams,* 2011 WL 4368980 at *12 (citing *Gregg v. U.S. Indus., Inc.,* 887 F.2d 1462, 1473 (11th Cir.1989); *Tamiami Trail Tours, Inc. v. J.C. Cotton,* 463 So.2d 1126, 1127 (Fla.1985)). "Under New York law, the elements of a claim for tortious interference with contractual relations are that: (1) a valid contract exists; (2) defendant had knowledge of the contract; (3) defendant intentionally and improperly procured

the breach of the contract; and (4) the breach resulted in damage to plaintiff." *Johnson & Johnson v. The Am. Nat. Red Cross,* 552 F.Supp.2d 434, 449 (S.D.N.Y. 2008) (citing *Finley v. Giacobbe,* 79 F.3d 1285, 1294 (2d Cir.1996)). Under Illinois law, the elements are: "(1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendants' knowledge of plaintiff's expectancy; (3) purposeful interference by the defendants that prevents the plaintiff's legitimate expectancy from being fulfilled; and (4) damages to the plaintiff resulting from such interference." *Burrell v. City of Mattoon,* 378 F.3d 642, 652 (7th Cir.2004) (citing *Dowd & Dowd, Ltd. v. Gleason,* 181 Ill.2d 460, 230 Ill.Dec. 229, 693 N.E.2d 358, 370 (1998)).

 ASIC and SGIC maintain that Plaintiffs have failed to allege that either Insurer Defendant caused a breach of Plaintiffs' mortgage agreements. Their argument rests in large part on their filed-rate defense. The Court has determined that Plaintiffs have stated a claim for breach of contract against EverBank, and that the filed-rate doctrine does not preclude Plaintiffs' claims here. *See* sections II.B.2 and II.C.2, *supra.* Because Plaintiffs have adequately pled that EverBank breached their mortgage agreements and that the Insurer Defendants intentionally and unjustifiably induced such breaches, Plaintiffs have stated valid tortious interference claims. *See Persaud,* 2014 WL 4260853 at *16 (finding similar allegations "sufficient to show [insurer], in executing the force-placed insurance scheme, acted in bad faith to interfere with [lender's] business relationship with Plaintiff"); *Hamilton,* 6 F.Supp.3d at 1319 (same); *Williams,* 2011 WL 4368980 at *12 (same).

 The Insurer Defendants further argue that Plaintiffs' tortious interference claims must fail because their actions were

privileged. "Florida law recognizes the principle that actions taken to safeguard or protect one's financial interest, so long as improper means are not employed, are privileged." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1321 (11th Cir.1998). A party's interference with another's business relationship is, therefore, justified where the "defendant is not a stranger to a business relationship [or] if the defendant has any beneficial or economic interest in, or control over, that relationship." *Treco Int'l S.A. v. Kromka*, 706 F.Supp.2d 1283, 1289 (S.D.Fla.2010) (citing *Palm Beach County Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So.3d 1090, 1094 (Fla. 4th DCA 2009)). Similarly, "Illinois courts have recognized a privilege in intentional interference with contract cases when the defendant acts to protect an interest 'which the law deems to be of equal or greater value than the plaintiff's contractual rights.'" *Janusz v. Fasco Indus., Inc.*, 1999 WL 162793, at *3 (N.D.Ill. Mar. 12, 1999) (quoting *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672, 677 (1989)).

■ Because the assertion of a privilege to interfere in an otherwise protected business relationship is an affirmative defense, "[t]his privilege argument ... is unavailing on a motion to dismiss." *Persaud*, 2014 WL 4260853 at *15 (citing *Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1161 (11th Cir.2001) ("[After] a plaintiff pleads and proves a prima facie case for tortious interference, the burden is on the defendant to avoid liability by showing his action is privileged[,]" and "whether an action is privileged is a jury question.")). *See also Lakeland Reg'l Med. Ctr., Inc. v. Astellas U.S. LLC*, 2011 WL 3035226, at *11 (M.D.Fla. July 25, 2011) ("Justification or privilege to interfere with a contract is an affirmative defense to a tortious interfer-

ence action. However, the mere presence of a possible affirmative defense, which has not yet been proven, does not present a basis for the dismissal of this claim.") (citing *Abele v. Sawyer*, 750 So.2d 70, 75 (Fla. 4th DCA 1999)).

■ Furthermore, even those with a privilege to interfere in a business relationship to protect their own economic interests "may still be liable for tortious interference if they do so in bad faith." *Hamilton*, 6 F.Supp.3d at 1320. "In other words, parties are disqualified from asserting the privilege if they act maliciously or with conspiratorial motives." *CSDS Aircraft Sales & Leasing, Inc. v. Lloyd Aereo Boliviano Airlines*, 2011 WL 1559823, at *5 (S.D.Fla. April 22, 2011); *see also Ice Portal, Inc. v. VFM Leonardo, Inc.*, 2010 WL 2351463, at *7 (S.D.Fla. June 11, 2010) ("[A]ctions taken to safeguard or protect one's financial interest" are privileged "so long as improper means ... include[ing] physical violence, misrepresentations, intimidation, conspiratorial conduct, illegal conduct, and threats of illegal conduct ... are not employed."). Plaintiffs have certainly alleged intentional and conspiratorial conduct by the Insurer Defendants here. *See Persaud*, 2014 WL 4260853 at *15 (refusing to dismiss tortious interference claims despite assertion of privilege where plaintiffs alleged insurers colluded to receive kickbacks and reinsurance and failed to disclose these self-serving activities to plaintiff); *Hamilton*, 6 F.Supp.3d at 1320–21 (allegations that insurers entered into exclusive arrangements with lender to force-place insurance on plaintiffs' properties at grossly excessive rates were sufficient to show that insurers acted in bad faith and with conspiratorial motive); *MS Produce, Inc. v. Burger King Corp.*, 2003 WL 21087883, at *6 (N.D.Ill. May 12, 2003) (allegations that defendant's actions were intentional and unjustified and were suffi-

cient to overcome privilege on motion to dismiss); *Von Der Ruhr v. Immtech Int'l, Inc.*, 326 F.Supp.2d 922, 927 (N.D.Ill.2004) (allegations of malice sufficient to overcome privilege on motion to dismiss). Therefore, the Insurer Defendant's purported privilege cannot bar Plaintiffs' tortious interference claims at this stage.

### 6. Plaintiffs' RICO and NYDPA Claims Fail (Counts IX, X and XI)

For the same reasons discussed above with regard to EverBank, *see* sections II. B.9 and 10, *supra*, Plaintiffs have failed to state a claim under RICO or the NYDPA against the Insurer Defendants. The Court need not address Defendants' arguments that the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, bars Plaintiffs' RICO claims.

### III. CONCLUSION

With respect to EverBank, Plaintiffs—with the exception of Avelar–Lemus' claims for breach of contract and good faith—have stated claims for breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), and violation of TILA (Count VI). Plaintiffs' breach of fiduciary duty claim (Count VII) is dismissed without prejudice, permitting Plaintiffs to amend their Complaint to allege special circumstances which created a fiduciary relationship between Plaintiffs and EverBank. Plaintiffs' unjust enrichment (Count III) and FDUT-PA (Count V) claims are dismissed with prejudice. With respect to ASIC and SGIC, Plaintiffs' unjust enrichment claim (Count IV) and their claim for tortious interference with a business relationship (Count VII), with the exception of Avelar–Lemus' claim for unjust enrichment, which is dismissed with prejudice, survive the Insurer Defendants' Motions. Plaintiffs' RICO and NYDPA claims against all Defendants (Counts IX, X and XI) are dis-

missed without prejudice, in the event, despite the Court's skepticism, Plaintiffs can plausibly allege causation with specificity.

For the forgoing reasons and as detailed above, it is hereby **ORDERED AND ADJUDGED** that

1. EverBank's Motion to Dismiss, ECF No. [32], is **GRANTED IN PART** and **DENIED IN PART,** as follows:

 a. Plaintiff Avelar–Lemus' claims for breach of contract and breach of the implied covenant of good faith and fair dealing, Counts I and II of the Complaint, ECF No. [1], are **DISMISSED without prejudice.**

 b. Counts III and V of Plaintiffs' Complaint, ECF No. [1], are **DISMISSED with prejudice.**

 c. As to EverBank, Counts VIII, IX, X and XI of Plaintiffs' Complaint, ECF No. [1], are **DISMISSED without prejudice.**

2. ASIC and SGIC's Motion on Jurisdiction, ECF No. [64], is **DENIED.**

3. ASIC's Motion to Dismiss, ECF No. [36], is **GRANTED IN PART** and **DENIED IN PART,** as follows:

 a. As to ASIC, Plaintiff Avelar–Lemus' claim for unjust enrichment, Count IV of Plaintiffs' Complaint, ECF No. [1], is **DISMISSED with prejudice.**

 b. As to ASIC, Counts IX, X and XI of Plaintiffs' Complaint, ECF No.[1], are **DISMISSED without prejudice.**

4. SGIC's Motion to Dismiss, ECF No. [37], is **GRANTED IN PART** and **DENIED IN PART,** as follows: As to SGIC, Counts IX, X and XI of Plaintiffs' Complaint, ECF No. [1], are **DISMISSED without prejudice.**

5. Plaintiffs may amend their Complaint, ECF No. [1] with respect to

those claims dismissed without prejudice on or before January 26, 2015.